# 15-1595-cv

## United States Court of Appeals

*for the*

## Second Circuit

~.~

AMERICAN UNIVERSITY OF ANTIGUA - COLLEGE OF MEDICINE,

*Petitioner-Appellee,*

-v.-

LEEWARD CONSTRUCTION COMPANY, LTD.,

*Respondent-Appellant,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR
## RESPONDENT-APPELLANT
## LEEWARD CONSTRUCTION COMPANY, LTD.

VERONICA A. MCMILLAN
LEWIS & GREER, P.C.
*Attorney for Respondent-Appellant*
510 Haight Avenue, Suite 202
Poughkeepsie, New York 12603
(845) 454-1200

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Respondent-Appellate Leeward Construction Company, Ltd. certifies that that it is a private non-governmental party without any corporate parent, affiliate and/or subsidiary, publicly held or otherwise. No publicly held corporation owns 10% or more of Leeward Construction Company, Ltd.'s stock.

# **TABLE OF CONTENTS**

**PAGE**

Preliminary Statement ...................................................................1

Statement of Jurisdiction ..............................................................3

Statement of Issues Presented for Review ...................................3

Statement of the Case ...................................................................4
    I.     The Parties .................................................................4
    II.    The First Arbitration Proceeding................................5
    III.   The Second Arbitration Proceeding ...........................8

Summary of Argument.................................................................11

Argument.....................................................................................12

    I.     The Standard of Review ...........................................12

    II.    In Deciding the AUA's ABST Claim, the Tribunal
          Exceeded its Authority Under the Parties'
          Arbitration Agreement..............................................14
          A.    Procedure Under the ABST Act..........................15
          B.    The AUA's Claim is Untimely Under the ABST Act ............16
          C.    The Partial Final Award Violates the Revenue Rule..............17

    III.   The Partial Final Award Constitutes a Manifest
          Disregard of the Law ...............................................21

    IV.   The Partial Final Award is Non-Final and Ambiguous ....................28

    V.    The AUA's Unjust Enrichment Claim Was Not Before
          the Tribunal.............................................................30

Conclusion...................................................................................33

Certificate of Compliance with FED. R. APP.P.32(A) .............34

Certificate of Service...................................................................35

ii

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*AG of Can. v. R. J. Reynolds Tobacco Holdings, Inc.,*
    268 F.3d 103 (2d Cir. 2001) ...................................................... 18, 19

*American University of Antigua – College of Medicine*
*v. Leeward Construction Co., Ltd.,*
    2015 U.S. Dist. LEXIS 57579 (SDNY 2015)..................................... 4, 19, 20

*Benjamin v. Traffic Executive Assoc. Eastern Railroads,*
    869 F.2d 107 (2d Cir. 1989) ........................................................ 23

*Besseler Waechter Glover & Co., Ltd. v. South Derwent Coal Co., Ltd.,*
    59 Lloyd's List Law Report 104 (King's Bench 1937) ................................ 26

*Bremer Handelsgesellschaft v. C. Mackprang Jr.,*
    1 Lloyd's Rep 221 (Court of Appeal 1979) .......................................... 26, 27

*Carte Blanche (Singapore) v. Carte Blanche Int'l.,*
    888 F.2d 260 (2d Cir. 1989) ........................................................ 21

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,*
    70 N.Y.2d 382 (1987)................................................................ 32

*Commercial Risk Reins. Co., Ltd. v. Security Ins. Co. of Hartford,*
    526 F.Supp.2d 424 (SDNY 2007) ................................................... 13

*DiRussa v. Dean Witter Reynolds, Inc.,*
    121 F.3d 818 (2d Cir. 1997) ........................................................ 13

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,*
    333 F.3d 383 (2d Cir. 2003) ........................................................ 14

*Dworkin-Cosell Interair Courier Services, Inc. v. Avraham,*
    728 F.Supp. 156 (SDNY 1989) ..................................................... 28

*Essex Cement Co. v. Italmare, S.p.A.,*
    763 F.Supp. 55 (SDNY 1991) ...................................................... 21

iii

*European Cmty. v. Japan Tobacco, Inc.*,
    186 F.Supp.2d 231 (EDNY 2002),
    *vacated and remanded* 355 F.3d 123 (2d Cir. 2004),
    *cert. granted, judgment vacated and remanded*, 544 U.S. 1012 (2005),
    *reinstated on reconsideration following remand*, 424 F.3d 175 (2d Cir.
    2005), *cert. denied*, 546 U.S. 1092 (2006) .............................................. 18, 19

*Fibrosa Spolka Akcyina v. Fairbarin Lawson Combe Barbour Ltd*,
    [1943] A.C. 32 ....................................................................................... 31

*Halligan v. Piper Jaffrey, Inc.*,
    148 F.3d 197 (2d Cir. 1998) ................................................................... 21

*In Re BearingPoint, Inc.*,
    2010 Bankr. LEXIS 3964 (SDNY 2010).................................................. 19

*Iran Aircraft Indus. v. Avco Corp.*,
    980 F.2d 141 (2d Cir. 1992) ................................................................... 14

*Kolel Beth Yechiel Michil of Tartakov, Inc. v. YLL Irrevocable Trust*,
    799 F.3d 99 (2d Cir. 2013) ..................................................................... 12

*Leeward Constr. Co. v. Am. Univ. of Antigua*,
    2013 U.S. Dist. LEXIS 43350 (SDNY 2013)........................................... 7

*Mavis Henry v. Tyrone Warner*,
    Claim No. ANUHCV 2000/0277, Eastern Caribbean
    Supreme Court (2009) ...................................................................... 22, 23

*Mey'er v. Gilmer*,
    18 NZLR 129 ......................................................................................... 26

*Michaels v. Mariforum Shipping, S.A.*,
    624 F.2d 411 (2d Cir. 1980) ................................................................... 29

*Motor Oil Hellas (Corinth) Refineries SA v. Shipping Corp. of India*,
    1 Lloyd's Rep. 391 (House of Lords 1990) ............................................. 26

*N.L.R.B. v. United Technologies,*
    706 F.2d 1254 (2d Cir. 1988) ................................................................ 24

*North River Ins. Co. v. Allstate Ins. Co.,*
    866 F. Supp. 123 (SDNY 1994) ........................................................ 23

*Pearl Seas Cruises, LLC v. Irving Shipbuilding, Inc.,*
    2001 U.S. Dist. LEXIS 87728 (Dist. of Conn. 2011) ................................ 29

*Rep. of Honduras v. Philip Morris Co., Inc.,*
    341 F.3d 1253 (11th Cir. 2003) ........................................................ 18

*Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.,*
    157 F.3d 174 (2d Cir. 1998) ........................................................ 29

*Scandinavian Reins. Co., Ltd. v. Saint Paul Fire & Marine Ins. Co.,*
    668 F.3d 60 (2d Cir. 2012). ........................................................ 12, 13

*Sole Resort S.A. de C.V. v. Allure Resorts Mgmt., LLC,*
    450 F.3d 100 (2d Cir. 2006). ........................................................ 13

*Stolt-Nielsen S.A. v. Animalfeeds Int'l. Corp.,*
    559 U.S. 662 (2013) ........................................................ 14

*Superintendent of Ins. v. Ochs,*
    377 F.3d 209 (2d Cir. 2004) ........................................................ 31

*Westdeutsche Landesbank Girozentrade v. Islington London BC,*
    [1996] 2 WLR 802(HL) ........................................................ 31

*Woods v. Dunlop Tire Co.,*
    972 F.2d 36 (2d Cir. 1992) ........................................................ 24

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,*
    126 F.3d 15 (2d Cir. 1997) ........................................................ 3, 13

*Zeiler v. Deutsch,*
    500 F.3d 157 (2d Cir. 2007) ........................................................ 13

| STAUTES | PAGE(S) |
|---|---|
| 28 U.S.C. §1291 | 3 |
| 9 U.S.C. §1 *et seq.* | 7, 13 |
| 9 U.S.C. §10(a) | 3, 14 |
| 9 U.S.C. 11(2) | 13 |
| 9 U.S.C. §§201-208 | 3, 12 |
| Fed. R. Civ. P. 12(b)(6) | 7 |

| OTHER AUTHORITIES | PAGE(S) |
|---|---|
| ABST Act (2006), *as amended* (2008) | *passim* |
| Antiguan Arbitration Act, Chapter 33 of the Laws of Antigua and Barbuda | 29 |

## PRELIMINARY STATEMENT

Leeward Construction Company, Ltd. ("Appellant" or "Leeward") appeals from the United States District Court for the Southern District of New York's (Cote, J.S.C.) Decision and Order confirming an arbitration award (the "Partial Final Award") in favor of American University of Antigua – College of Medicine ("Appellee" or "AUA") stemming from the construction of a medical school in St. Johns, Antigua. The District Court erred. The Partial Final Award should have been vacated and Leeward's claim in the underlying arbitration reinstated.

First, in making the Partial Final Award the Tribunal decided questions concerning the applicability of the Antigua and Barbuda Sales Tax Act, an action which was outside the scope of its authority given the procedures and statute of limitations in the ABST Act as it relates to refunds as well as the long-standing common law doctrine, known as the revenue rule, which precluded the Tribunal and the District Court from adjudicating the AUA's ABST claim, an un-adjudicated tax claim of a foreign nation.

The Partial Final Award constitutes a manifest disregard of the law. In making its decision, the Tribunal did not apply Antiguan law, the law governing the parties' contract, to the AUA's ABST claim and Defective Works claims. If Antiguan law had been applied, the Tribunal would have properly concluded that

the AUA's claims are barred by the doctrines of *res judicata*, collateral estoppels, claim preclusion and issue preclusion.

Third, the Partial Final Award is non-final and ambiguous. It leaves Leeward to open to double-liability and the possibility of future litigation. The award completely fails to address the possibility that Leeward is forced to pay over huge sums of money to the AUA in the repayment of ABST on the Project only to later have the Antiguan government find that Leeward satisfied all its obligations under the ABST Act thereby precluding the AUA's refund, in the first instance. Thus, the award is non-final and ambiguous.

Finally, the Tribunal decided a claim that was not presented to it. The Tribunal awarded the AUA's damages based on its unjust enrichment claim. However, the AUA's unjust enrichment claim was outside the Tribunal's purview because it is an equitable, restitution claim that under Antiguan law is independent of any contract. Accordingly, the AUA's unjust enrichment claim could not arise under the parties' arbitration agreement and the Tribunal improperly decided the claim in the first instance.

## **STATEMENT OF JURISDICTION**

This appeal arises from a petition to enforce an arbitration award. The District Court's jurisdiction was based on the Convention for the Enforcement of Foreign Arbitral Awards ("New York Convention"), 21 U.S.T. 2517[1], as incorporated into the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§201-208.

The District Court clerk's judgment was entered on May 5, 2015. (A 902) Leeward filed its Notice of Appeal on May 14, 2015. (A 014) Thereafter, Leeward filed its scheduling notification pursuant to Local Rule 31.2 providing that it would perfect its appeal herein on or before August 25, 2015. This Court's jurisdiction is based on 28 U.S.C. §1291.

## **STATEMENT OF ISSUES PRESENTED FOR REVIEW**

1. Whether the arbitrators exceeded their authority by deciding the AUA's ABST claim which relates to the application of Antigua and Barbuda tax law?

2. Whether the arbitrators in issuing the Partial Final Award manifestly disregarded the law?

3. Whether the Partial Final Award is enforceable as it is non-final and ambiguous?

---

[1] The Convention, also known as the "New York Convention" and the "1958 Convention" was enacted on June 10, 1958, and ratified by the United States on December 29, 1970. *See Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15-18 n.1 (2d Cir. 1997). The Commonwealth of Antigua and Barbuda ratified the Convention of February 2, 1989. *See* http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention_status.html.

4. Whether the arbitrators exceeded their powers by deciding the AUA's unjust enrichment claim which is an equitable claim and does not arise under the parties' contract?

## STATEMENT OF THE CASE

This is an action to enforce an arbitration award. AUA's Petition to enforce the Partial Final Award was filed on October 21, 2014 (A 035), and on December 11, 2014, Leeward cross-moved to deny enforcement, vacate and/or modify the award. (A 249)  On May 1, 2015, Judge Denise L. Cote issued a memorandum opinion denying Leeward's cross-motion and enforcing the Partial Final Award. (A 015)  The opinion is reported at *American University of Antigua – College of Medicine v. Leeward Construction Co., Ltd.*, 2015 U.S. Dist. LEXIS 57579 (S.D.N.Y. May 1, 2015).

## I.    The Parties

Leeward is a corporation duly organized and existing under the laws of the Commonwealth of Antigua and Barbuda, with office and principal place of business at All Saints Road, St. Johns, Antigua.  The AUA is a corporation duly organized and existing under the laws of Antigua and Barbuda, with office and principal place of business at University Park, Jabberwock Beach Road, Coolidge, Antigua.  The AUA also has an office in New York State through its principal/agent.

4

## II.    The First Arbitration Proceeding

On September 25, 2008, Leeward, as contractor, and the AUA, as owner,

executed a contract for the construction of a medical school in St. Johns, Antigua

(the "Contract"). Section 4.6 of the General Conditions to the Contract contained

an arbitration agreement that reads as follows:

> § 4.6 ARBITRATION
> § 4.6.1    Any Claim arising out of or related to the
> Contract, except Claims relating to aesthetic effect and
> except those waived as provided for in Sections 4.3.10,
> 9.10.4 and 9.10.5, shall, after decision by the Architect or
> 30 days after submission of the Claim to the Architect, be
> subject to arbitration.
>
> § 4.6.2    Claims shall be decided by arbitration which,
> unless the parties mutually agree otherwise, shall be in
> accordance with the Construction Industry Arbitration
> Rules of the American Arbitration Association currently
> in effect.   The demand for arbitration shall be filed in
> writing with the other party to the Contract and with the
> American Arbitration Association, and a copy shall be
> filed with the Architect.   Location of any Arbitration will
> be Antigua.

(A 073)

On February 3, 2011, Leeward commenced the First Arbitration Proceeding

with the American Arbitration Association International Center for Dispute

Resolution ("AAA") to arbitrate claims arising out of or related to the Contract.

On or about October 14, 2011, Leeward served and filed an Amended Demand for

Arbitration requesting an award for breach of contract in the amount of US

$2,518,931.97/EC $6,800,572.28[2]; interest on late payments as provided in the Contract from the date the payments were due until the date the payments were made at the legal rate of interest in Antigua as determined by the Arbitrators; and legal fees and expenses, including the cost and expense of arbitration, as determined by the Arbitrators in accordance with the laws of Antigua. (A 259)

On or about November 30, 2011, the AUA filed a reply to the Amended Demand that included counterclaims for liquidated delay damages in the amount of US $117,000.00 and in the alternative, actual delay damages in the amount of US $371,955.31/EC $1,004,199.00. (The AUA withdrew its counterclaim for actual delay damages on April 11, 2012.) (A 283)

In March, 2012, the Tribunal conducted evidentiary hearings in San Juan, Puerto Rico. On May 22, 2012, the hearings were closed following the submission of the parties' lengthy post-hearing findings of fact and conclusions of law. The Tribunal issued an award certified June 22, 2012 and modified August 8, 2012, in which the Arbitrators directed the AUA to pay damages to Leeward in the amount

---

[2]Leeward's breach of contract claim alleged that the AUA repeatedly breached the contract by failing to issue change orders/change directives for additional contract work; failing to pay for additional work that the AUA authorized and directed Leeward to perform; failing to pay Leeward's payment applications in accordance with the terms of the Contract; failing to certify the Project as substantially complete; failing to issue a final certificate of payment; failing to make final payment to Leeward in accordance with the terms of the Contract; failing to pay the mobilization fee as provided in the Contract; failing to authorize overtime as provided in the Contract; failing to coordinate the work of other contractors as required in the Contract; and failing to properly administer the Contract as provided in the Contract documents. (A 259)

of $976,421.37, plus interest at the rate of seven percent (7%) per annum as provided in the Award (the "First Arbitration Award"). The First Arbitration Award also granted the AUA damages in the amount of $58,500.00, plus interest at the rate of 7% per annum as provided in the Award. (A 321)

On August 16, 2012, Leeward commenced a proceeding in the District Court styled *Leeward Construction Company, Ltd. v. American University of Antigua – College of Medicine, et ano.*, 12-CV-062080-LAK/GWG, for an order confirming the First Arbitration Award and for the entry of a money judgment against AUA in the amounts stated in the First Arbitration Award pursuant to the Convention. On September 25, 2012, AUA cross-moved to dismiss pursuant to the *Forum Non Conveniens* Doctrine and Fed. R. Civ. P. 12(b)(6) or in the alternative, to vacate or modify the award pursuant to the FAA, 9 U.S.C. §1 *et seq*. On March 26, 2013, the District Court entered a Memorandum Opinion which, *inter alia*, granted Leeward's petition. *See Leeward Constr. Co. v. Am. Univ. of Antigua*, 2013 U.S. Dist. LEXIS 43350 (SDNY 2013) (A 388) On June 11, 2013, the Court's Clerk entered a judgment based on the First Arbitration Award (the "First Judgment"). (A 397)

On April 29, 2013, AUA filed a Notice of Appeal and thereafter, moved the Court for a stay of enforcement of the First Judgment pending the outcome of its appeal. On August 9, 2013, AUA filed a *supersedeas* bond in the amount of

7

$1,073,000.  On August 16, 2013, the Court entered a Stipulation and Consent Order staying the enforcement of the First Judgment pending the outcome of AUA's appeal.  On or about February 2, 2015, following the expiration of several Local Rule 42.1 stipulations, AUA perfected its appeal from the First Judgment. On June 25, 2015, Leeward moved to have the AUA's appeal heard in tandem with the instant appeal before the same panel given the commonality of facts between the two appeals.  On July 22, 2015, this Court granted Leeward's motion ordering that the instant appeal be heard in tandem with Case No. 13-1708 before the same panel of the Court.

### III.    The Second Arbitration Proceeding

On February 7, 2013, Leeward commenced a second arbitration proceeding against AUA with the American Arbitration Association International Center for Dispute Resolution to arbitrate a small amount of money (US$30,762.00) outstanding after the First Arbitration Proceeding (the "Second Arbitration Proceeding"). (A 093)  During the First Arbitration Proceeding, the AUA admitted on multiple occasions that it was liable to pay to Leeward the outstanding amount as a result of a mis-tabulation during invoicing on the project.  Neither party was aware of the outstanding amount until the AUA pointed it out during the hearings. Thus, the First Arbitration Proceeding Tribunal held that it could not award the amount to Leeward because it was not part of the First Arbitration Proceeding. (A

331-332)  Leeward attempted to obtain payment from the AUA for this amount but was refused.

The AUA pled its answer and counterclaims in the Second Arbitration Proceeding several times.  In its initial Answer and Counterclaim, dated February 27, 2013, the AUA denied that it owed Leeward the monies for the invoice mis-tabulation (despite admitting the liability on multiple occasions during the First Arbitration Proceeding) and, as a counterclaim, the AUA asserted, for the very first time, that it is entitled to a refund of all Antigua and Barbuda Sales Tax ("ABST") that it paid to Leeward on the project, in the amount of EC$3,614,522.41/US$1,338,723.00 (the "ABST claim"), even though ABST was an issue in the First Arbitration in determining the amount due Leeward.  (A 132) ABST is a broad based tax on the consumption of goods and services in Antigua and Barbuda. (A 463)   ABST is a value-added tax in which ABST paid by business entities on purchases and costs is offset by ABST charged on sales. ABST surpluses collected are remitted to the Antigua and Barbuda government. (*Id.*)

Subsequently, the AUA amended its answer to assert an additional counterclaim alleging various construction defect claims in the amount of EC$2,642,450.00/US$978,685.00 (the "Defective Work claims") even though the AUA conceded that it was aware of the alleged defects prior to the First

9

Arbitration. The AUA's Defective Work claims allege defects with respect to the staircases, wall surfaces, roof, scuppers and pipes, windows, tracery and fascia, elevator shafts, and concrete installed on the Project. (A 154) Thereafter, the AUA served an Amended Answer and Counterclaims dated August 1, 2013. (A 897) The AUA was aware of its ABST claim and Defective Work claims at the time of the First Arbitration Proceeding. (A 196, 200, 208, 2017, 227, 236, 240, 243)

The parties agreed to submit their claims in the Second Arbitration Proceeding to the Tribunal for decision in the nature of motions for summary judgment. In its motion, Leeward argued that AUA's ABST claim should be dismissed because (a) the AUA was required under the Contract, read in conjunction with the ABST Act, to pay Leeward ABST; (b) the doctrine of *res judicata* bars the ABST claim; (c) the AUA lacks standing to bring the ABST claim; (d) the doctrines of waiver and/or modification bar the ABST claim; and (e) the ABST claim does not arise under the Contract and, therefore, is not subject to arbitration. With regard to the AUA's defective work claims, Leeward argued that the claims were subject to dismissal because (a) the doctrine of *res judicata* bars the Defective Work claims; (b) the AUA failed to comply with the required notice provision under the Contract and, as a result, the Defective Work claims are untimely; and (c) the windows portion of the Defective Work claims is not subject to arbitration because the windows work was performed under a separate contract.

10

The AUA moved for summary judgment on its ABST claim and for dismissal of several of Leeward's defenses. (SDNY Docket No. 10-1 – 10-66; 11-1; 12-1; 13-1 – 13-31; 14-1; 15-1; 16-1; 17-1; 18-1 – 18-2; 33-23)

On February 6, 2014, the Tribunal issued a decision which failed to resolve any of the major issues in the proceeding. (A 158) On April 28, 2014, at the joint request of the parties, the Tribunal conducted a day-long oral argument in Miami, Florida in which it heard from counsel for both parties. On September 18, 2014, the Tribunal issued the Partial Final Award which, *inter alia*, dismissed Leeward's claim and granted AUA's ABST claim. (A 172) The Partial Final Award contained a lengthy dissenting opinion which vigorously detailed the errors in the Partial Final Award. (A 418)

## **SUMMARY OF ARGUMENT**

On appeal of a confirmed arbitration award, this Court reviews questions of law *de novo*. A confirmed arbitration award can be set aside under the Convention and the FAA where the arbitrators have exceeded their powers or have manifestly disregarded the law.

In the present case, the Tribunal exceeded its powers when it decided the AUA's ABST claim and usurped the Antiguan government role in violation of the ABST statute as well as the revenue rule. The Tribunal manifestly disregarded the law in failing to apply the doctrines of *res judicata*, collateral estoppel, claim

11

preclusion and issue preclusion as Antiguan law provides. The Partial Final Award as rendered is non-final and ambiguous as it fails to address the possibility that the Antiguan government may find that Leeward satisfied its requirements under the ABST Act and that the AUA was not entitled to a refund of ABST paid on the Project thereby leaving Leeward open to double-liability and future litigation. Finally, the Tribunal exceeded its powers in making an award to the AUA on the basis of its unjust enrichment claim, an equitable claim under Antiguan law, which does not arise under the parties' contractual arbitration agreement.

## ARGUMENT

### I.   STANDARD OF REVIEW

On appeal of an arbitration award, this Court reviews questions of law *de novo*. *Kolel Beth Yechiel Michil of Tartakov, Inc. v. YLL Irrevocable Trust*, 799 F.3d 99, 103 (2d Cir. 2013); *Scandinavian Reins. Co., Ltd. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012).

Before the District Court, the AUA sought confirmation of the Partial Final Award and entry of judgment in accordance therewith pursuant to the Convention, 21 U.S.T 5217, as incorporated into the FAA, 9 U.S.C. §§201-208. The Convention governs the confirmation of the Partial Final Award because Leeward and the AUA are incorporated under the laws of Antigua; their principal places of business are in Antigua; the underlying dispute concerns the construction of a

12

medical school in Antigua; and the contract between Leeward and the AUA for the construction of the medical school, specifically provides that Antiguan Law shall apply to the interpretation of the contract. *See Zeiler v. Deutsch*, 500 F.3d 157, 164 (2d Cir. 2007); *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3f 15, 19 (2d Cir. 1997); *see also, Commercial Risk Reins. Co., Ltd. v. Security Ins. Co. of Hartford*, 526 F.Supp.2d 424, 427 (S.D.N.Y. 2007). Given that the proceedings to date have been held in the United States (oral argument was held in Miami, Florida and the Partial Final Award, including the Dissenting Opinion was executed in the United States), the confirmation proceeding is also governed by the FAA, 9 U.S.C. §1, *et seq. See Zeiler*, 500 F.3f at 164; *Scandinavian Reins. Co., Ltd.*, 668 F.3d at 71; *Sole Resort S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 102 n.1 (2d Cir. 2006). Thus, the Partial Final Award is subject to vacatur under both the Convention and the FAA.

Both the FAA and the Convention allow for vacatur of an arbitration award where the arbitrators have exceeded their authority in the parties' arbitration agreement. *See* 9 U.S.C. §10(a)(4); *see also*, 9 U.S.C. 11(2) and Article V of the Convention. A court's inquiry in this regard focuses on "whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue…" *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 824 (2d Cir. 1997). This includes rendering a decision in compliance with the law the

parties explicitly agreed would govern the agreement. *See Stolt-Nielsen S.A. v. Animalfeeds Int'l. Corp.*, 559 U.S. 662, 672-673 (2013); *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389-90 (2d Cir. 2003). A tribunal's actions in passing on a matter not before it or outside the scope of its authority invokes questions of due process in violation of 9 U.S.C. §10(a)(3) and Article V(1)(b) of the Convention and should not be countenanced. *See, e.g., Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 146 (2d Cir. 1992) (These provisions protect "the fundamental requirement of due process ... the opportunity to be heard at a meaningful time and in a meaningful manner.")

## II.   IN DECIDING THE AUA'S ABST CLAIM, THE TRIBUNAL EXCEEDED ITS AUTHORITY UNDER THE PARTIES' ARBITRATION AGREEMENT

The Partial Final Award made findings with regard to the applicability of the Antigua and Barbuda ABST Act to the Contract. (A 404-406) The Tribunal's findings in this regard were outside of its authority and the scope of the arbitration agreement between the parties. In the Dissenting Opinion, Arbitrator Romero concisely explains the problems with the Partial Final Award as it concerns the ABST Act, including the Tribunal's complete disregard for the ABST Act procedures as it relates to claims for ABST refunds and the fact that the AUA's claim is untimely under the statute. Most significantly, Arbitrator Romero opines in dissent that, in deciding the AUA's ABST claim, the Tribunal crossed over into

tax law enforcement – a right only granted to the Antigua and Barbuda tax authorities – not the Tribunal or the AUA. (A 430-433)

## A. Procedure Under the ABST Act

In confronting this question, the District Court skirted the question of whether the Tribunal improperly engaged in tax enforcement by stating: "AUA is seeking the return of money it paid to Leeward, and which Leeward has to date retained." *Am. Univ. of Antigua College of Med. v. Leeward Constr. Co.*, 2015 U.S. Distr. LEXIS 57579, *16. The District Court is incorrect. The primary basis for the AUA's claim for a refund of the ABST it paid on the Contract was whether or not the Antigua and Barbuda ABST Act applied to the Project, in the first instance. Further, once a determination is made regarding the applicability of the tax, if incorrect payments have been made, the statute does not provide for the taxpayer (AUA) to seek a refund from the collector (Leeward), but rather, the statute provides a mechanism in which the taxpayer is to seek a credit or refund from the Antiguan government. *See, e.g.*, ABST Act, Part XVII, 44 (2006), *as amended* (2008). (A 521-523)  For example, ABST Act, Part XVII, 44(4) provides: "A taxable person who has erroneously overpaid ABST for a tax period may apply in writing to the Commissioner for an input tax credit equal to the amount overpaid…" (A 522)

15

Nothing in the ABST Act creates or contemplates a private right of action or otherwise authorizes a private person to enforce the ABST Act. *See generally* ABST Act (2006), *as amended* (2008) (A 463). In fact, the ABST act expressly contemplates the opposite: the Antiguan government is the only person with the right to enforce the Statute. *See* ABST Act, Part XI (2006), *as amended* (2008) (A 521) Therefore, if the AUA inadvertently or mistakenly paid ABST to Leeward, then its only remedy is to seek a credit or refund of the ABST from the Antiguan government pursuant to the ABST Act. *See, e.g.*, ABST Act, Part XVII, 44 (2006), *as amended* (2008). (A 521-523) Similarly, if Leeward failed to remit ABST to the Antiguan government that it lawfully collected from the AUA, *see* ABST Act, Part II (2006), *as amended* (2008) (A 484-485), then the statutory remedy is not for the AUA to seek recovery of the ABST that it was legally obligated to pay to Leeward; but rather, for the Antiguan government to commence enforcement proceedings against Leeward for failing to remit any ABST that it might owe, including criminal prosecution. *See, e.g.*, ABST Act, Part XVI (2006), *as amended* (2008). For example, sections 66-73 provide for monetary penalties for failing to comply with the ABST Act and sections 74-90 provide for criminal penalties for failing to comply with the ABST Act. (A 542-550) But the ABST Act does not provide for AUA to seek enforcement on its own.

## B. The AUA's Claim is Untimely Under the ABST Act

In rendering and confirming the Partial Final Award, the Tribunal and the District Court have conferred upon the AUA relief that it is not otherwise entitled to under the term of the ABST Act. Further, the Tribunal and the District Court have countenanced the AUA's failure to adhere to the statutory requirements for obtaining an ABST refund. The ABST Act provides that refund requests must be made within three years. *See* ABST Act, Part XVII, 44(5) (2006), *as amended* (2008). (A 523) Section 44(5) provides:

> An application under subsection (4) must be made within 3 years from the end of the tax period to which the overpayment relates and the Commissioner must make a decision in relation to the application within 30 days of the date of the application, unless on or before that time the Commissioner commences an audit of the taxpayer in relation to that tax period.

ABST Act, Part XVII, 44(5). (A 523)

The AUA failed to comply with this provision. Thus, the Tribunal and the District Court have breathed life back into an otherwise time barred claim under the ABST Act. The ABST Act provides exclusive procedures for dealing with the AUA's ABST claim and the "Tribunal should not exercise its powers to administer the tax laws of that country and should not interfere with the administration and enforcement of the tax laws of Antigua and Barbuda." (A 432)

17

## C. The Partial Final Award Violates the Revenue Rule

Further, as Arbitrator Romero points out in his dissenting opinion (A 430-433), the decisions of the Tribunal and the District Court are in contravention to the "revenue rule ... a longstanding common law doctrine providing that courts of one sovereign will not enforce a final tax judgment or unadjudicated tax claims of other sovereigns..."*AG of Can. v. R. J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 109 (2d Cir. 2001)  "The revenue rule is implicated whenever the substance of the claim is, either directly or indirectly, one for tax revenues, such that the whole object of the suit is to collect tax for a foreign revenue, and that this will be the sole result of a decision in favour of the plaintiff."  *European Community v. RJR Nabisco, Inc.*, 355 F.3d 123, 131 (2d Cir. 2004), *cert. granted, judgment vacated and remanded*, 544 U.S. 1012 (2005), *reinstated on reconsideration following remand*, 424 F.3d 175 (2d Cir. 2005), *cert. denied*, 546 U.S. 1092 (2006); *see also*, *Rep. of Honduras v. Philip Morris Co., Inc.*, 341 F.3d 1253, 1256 (11th Cir. 2003)("The revenue rule is a long-standing common law rule that prevents the courts of one sovereign from enforcing or adjudicating tax claims from another sovereign.")

The revenue rule applies to both direct and indirect enforcement efforts. *See AG of Can.,* 268 F.3d at 131-132.  "What matters is not the form of the action, but the substance of the claim." *Id.*

> Indirect claims …run afoul of the revenue rule, and
> include any claim whereby the damages alleged by
> plaintiff are derivative of unpaid foreign taxes, or based
> on the costs of enforcing foreign tax laws. Thus, any
> action in which the court 'will have to pass on [] the
> validity of [foreign] revenue laws and their applicability
> [to the claims at bar]' constitutes 'enforcing [foreign]
> revenue laws,' and thereby triggers the revenue rule.

*European Cmty. v. Japan Tobacco, Inc.*, 186 F.Supp.2d 231, 235 (citing *AG of*

*Can.*, 268 F.3d at 108), vacated and remanded 355 F.3d 123 (2d Cir. 2004), *cert.*

*granted, judgment vacated and remanded*, 544 U.S. 1012 (2005), *reinstated on*

*reconsideration following remand*, 424 F.3d 175 (2d Cir. 2005), *cert. denied*, 546

U.S. 1092 (2006); *see also, In Re BearingPoint, Inc.*, 2010 Bankr. LEXIS 3964,

*3-5 (SDNY 2010) (U.S. Bankruptcy Court disallowed two claims filed by the

Republic of Indonesia against a controlling shareholder of an Indonesian

corporation because the claims were an attempt to recover taxes in violation of the

revenue rule). Indeed, the District Court acknowledged that a "a suit to enforce a

tax judgment or obtain a tax refund, …would be presumptively barred under the

'revenue rule.'" *Am. Univ. of Antigua College of Med.*, 2015 U.S. Dist. LEXIS

57579 at *11.

The AUA's ABST claim is nothing more than an attempt to adjudicate the

Antigua and Barbuda ABST Act outside the auspices of the statute and the

Antiguan government and obtain a tax refund. The entire basis for the AUA's ABST claim is derivative of the foreign taxes – ABST – that Leeward allegedly failed to pay. Following AUA's logic, if Leeward paid the tax to the Antiguan government that the AUA claims it was supposed to pay under the ABST Act then, the AUA would not have a claim for what is essentially a tax refund under the ABST.

According to the AUA, it has been directed by the Antiguan government to seek a refund directly from Leeward, even though such remedy is not apparent in the ABST Act. (A201-202) Thus, the AUA, is the equivalent of an agent of the Antiguan government to the extent the AUA is seeking to collect the taxes that Leeward allegedly owed to the Antiguan Government under the ABST Act, and then keep the money as a tax refund under the Act. *See Am. Univ. of Antigua College of Med.*, 2015 U.S. Dist. LEXIS 57579 at *11. Further, the ABST statute provides a mechanism by which the determination is to be made and an avenue for relief if the tax was improperly collected. In ruling and then confirming the AUA's ABST claim, the Tribunal and the District Court have improperly abrogated the Antiguan government's role in enforcing its own statute in violation of the revenue rule. Accordingly, the District Court's decision should be reversed by this Court.

## III.  THE PARTIAL FINAL AWARD CONSTITUTES A MANIFEST DISREGARD OF THE LAW

A manifest disregard for the law occurs where an arbitrator makes an error that is "'obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. ... [T]he governing law alleged to have been disregarded by the arbitrators must be 'well defined, explicit and clearly applicable.'" *Essex Cement Co. v. Italmare, S.p.A.*, 763 F.Supp. 55, 57 (SDNY 1991) (quoting *Carte Blanche (Singapore) v. Carte Blanche Int'l*, 888 F.2d 260, 265 (2d Cir. 1989))  An arbitration award should be modified or vacated where the arbitrators knew the governing legal principle but refused to apply it or ignored it altogether and the law was well defined, explicit and clearly applicable. *See Halligan v. Piper Jaffrey, Inc.*, 148 F.3d 197, 202 (2d Cir. 1998)  Here, the Tribunal improperly refused to apply the doctrines of *res judicata*, collateral estoppel, claim preclusion and issue preclusion. (A 403)  As Arbitrator Romero points out in his dissent:

> Leeward presented persuasively its position that either res judicata, collateral estoppel, claim preclusion, or issue preclusion apply.  In the first arbitration proceeding (which covered the period of February 2011 through August 2012, when the amended award was issued), AUA had full knowledge of the ABST taxes paid to Leeward, AUA contested in the first arbitration the final accounting and the ABST taxes appearing on the bills (and affidavits submitted by AUA expressly

confirmed such review and knowledge), AUA made open representations in the first proceeding confirming not only that AUA agrees with the computations and payments it made to Leeward but also corrected and overpayment by AUA and expressed admitted owing more taxes in the approximate amount of US $33,000. AUA openly agreed to pay it outside of the first proceeding. … AUA openly represented in the first proceeding (at a time AUA had full knowledge of the issues concerning the unwillingness of the tax authority to certify nonapplicability of ABST tax as to the providers of the project), with full knowledge of the issues concerning ABST tax, that it agreed with the final accounting excepting the items challenged and damages raised.

(A 434-435)

The Tribunal refused to properly apply these doctrines despite ample evidence of their applicability to the AUA's ABST claim and Defective Work claims both under Antiguan law as well as United States federal law. The District Court countenanced this failure merely because the Tribunal mentioned the doctrines in passing and dismissed their applicability. Just because the Tribunal "considered" the doctrines does not mean that they did not manifestly disregard them.

Under Antiguan law, *res judicata* requires a party to present its whole case concerning the same subject matter at the same time and precludes a party from asserting causes of action concerning the same subject matter in multiple litigations. *See, e.g., Mavis Henry v. Tyrone Warner,* Claim No. ANUHCV

2000/0277, Eastern Caribbean Supreme Court (2009) (citing *Henderson v Henderson,* 3 Hare 100, 114-115 (1943)). (A 803)   As the Eastern Caribbean Supreme Court stated in *Mavis Henry*:

> where a given matter becomes the subject of litigation in, and of adjudication by, a court of competent jurisdiction, the court requires that the parties to that litigation to bring forward their whole case, and will not (except under special circumstances) permit the same parties to open the subject of litigation in respect of matter which might have been brought forward as part of the subject in contest, but which was not brought forward, only because they have, from negligence, inadvertence, or even accident, omitted part of their case.   The plea of res judicata applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.

*Mavis Henry v. Tyrone Warner,* Claim No. ANUHCV 2000/0277, Eastern Caribbean Supreme Court (2009) (citing *Henderson v Henderson,* 3 Hare 100, 114-115 (1943) [emphasis omitted]). (A 803) The Antiguan doctrine of *res judicata* is very similar to the United States Common Law, where a "final judgment on the merits bars further claims that were or could have been raised in that action." *Benjamin v. Traffic Executive Assoc. Eastern Railroads,* 869 F.2d 107, 111 (2d Cir. 1989); *North River Ins. Co. v. Allstate Ins. Co.,* 866 F. Supp.

23

123, 127 (S.D.N.Y. 1994). It is the identity of the facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which the individual chooses to frame his complaint. *See Woods v. Dunlop Tire Co.,* 972 F.2d 36, 37 (2d Cir. 1992). "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *N.L.R.B. v. United Technologies,* 706 F.2d 1254, 1260 (2d Cir. 1988).

The AUA's ABST claim and Defective Work claims herein are barred by *res judicata* because they concern the same subject matter that was previously adjudicated in the First Arbitration Proceeding, to wit: the scope of the Contract, the administration of the Contract, payments under the Contract, and Leeward's performance under the Contract. In addition, the same series of transactions that were at issue within the First Arbitration Proceeding are at issue within the ABST claim, namely the 27 payment requisitions that Leeward submitted to the AUA and the AUA reviewed, processed and paid, including the payment of ABST. (SDNY Docket No. 10-3 – 10-31) Lastly, the same evidence and facts are needed to support both the claims made within the First Arbitration Proceeding and the AUA's ABST claim asserted herein. (SDNY Docket No. 10-2- 10-10; 10-12 – 10-13; 10-14; 10-16 – 10-31; 10-48) Indeed, each of the payment requisitions at issue

24

in the First Arbitration Proceeding had a line item for ABST, which the AUA paid without protest even though the AUA now claims- after losing the First Arbitration Proceeding - that it was never required to pay ABST in the first place. As a result, the AUA could have and should have asserted the ABST claim in the First Arbitration Proceeding, particularly since it was well aware of its alleged claim at the time the First Arbitration Proceeding was commenced.

The AUA began utilizing the project on or about August 1, 2009. (SDNY Docket No. 10-36, p. 744:1-15) Leeward completed the Contract on October 31, 2009. (SDNY Docket No. 10-40, p.31) Leeward commenced the First Arbitration Proceeding on February 3, 2011. (A 259) Thus, the AUA's Defective Work claims would have and should have been known to the AUA at the time the First Arbitration Proceeding was commenced. In fact, the AUA admitted in these proceedings that it had knowledge of its alleged defects prior to the commencement of the First Arbitration Proceeding, but failed to assert the claims. (SDNY Docket No. 10-49) Just like the ABST claim, the AUA could have and should have brought a counterclaim against Leeward for any alleged defects in the First Arbitration Proceeding.

Furthermore, the Tribunal manifestly disregarded the applicability of the doctrines of waiver and modification to the AUA's ABST claim. At common law, a contractual provision is waived when a party represents, in word or deed: (1) that

25

it will forbear to enforce a right it holds by that provision; or (2) that it will not insist on the other party's performance of an obligation under that provision, and the other party acts accordingly. *See* Sean Wilken, Wilken and Villiers: The Law of Waiver, Variation and Estoppel 2d ("Wilken"),§ 3.15; *Motor Oil Hellas (Corinth) Refineries SA v. Shipping Corp. of India,* 1 Lloyd's Rep. 391, 397-98 (House of Lords 1990) (explaining that waiver occurs when a party forbears from exercising a right upon the other party's breach); 1 Chitty on Contracts ("Chitty"), § 22-040 ("Where one party voluntarily accedes to a request by the other that he should forbear to insist on the mode of performance fixed by the contract, the Court may hold that he has *waived* this right to require that the contract be performed in this respect according to its original tenor") (emphasis in original); *Besseler Waechter Glover & Co., Ltd. v. South Derwent Coal Co., Ltd.,* 59 Lloyd's List Law Report 104, 108 (King's Bench 1937). *See also Mey'er v. Gilmer,* 18 NZLR 129, 136-37. (A 710, 816, 823, 855, 861) The parties' conduct or course of dealing can constitute a waiver of a contractual provision. *See* Chitty, § 22-041 ("A waiver may be oral or written or inferred from conduct."); *see also* Wilken,§ 4.07. (A 855) Conduct constitutes a waiver if, in light of all circumstances, it clearly evinces a party's decision to forbear from insisting on its rights. *See* Wilken, §§ 4.07-4.08; *see, e.g., Bremer Handelsgesellschaft v. C. Mackprang Jr.,* 1 Lloyd's Rep 221, 230 (Court of Appeal 1979). (A 716, 861) A party that waives a

provision of a contract loses "his right to require that the contract be performed in this respect according to its original tenor," and cannot recover it *(i.e.,* revoke his waiver) except with adequate notice in limited circumstances. Chitty, §§ 22-040 and 22-043; *see also* Wilken,§ 4.01. (A 855, 861)  Specifically in commercial contexts, a party's conduct constitutes a waiver where the party "persists in the residual contractual relationship" and/or continues to accept benefits arising therefrom, notwithstanding the   other party's nonconforming performance of an obligation.  *Bremer* at 230; Wilken, § 4.08 (unequivocal conduct constituting a waiver includes "[v]oluntary acceptance after breach of benefits arising from the contract"). (A 716, 861)

The AUA waived the applicable contract terms by repeatedly approving, in writing, the inclusion of ABST in each and every one of Leeward's 27 payment requisitions. (SDNY Docket No. 10-3 – 10-31)   The AUA's waiver of the applicable contract terms is evidenced in its express approval and payment of each and every payment requisition including ABST without protest. (*Id.*)  Thus, the AUA has waived its right (to the extent it had one) to seek repayment of the ABST under the terms of the Contract.  Even assuming, *arguendo,* that the AUA's course of conduct and written documentation does not meet the formal requirements of waiver, the AUA's written approval of the payment of ABST, without protest, in each of the 27 payment applications constitutes a modification of the Contract's tax

payment provisions. The Contract provides that any modifications must be in writing and signed by both parties. The AUA's written approval of the payment of ABST on each and every payment application Leeward submitted constitutes a modification of the Contract's tax payment provisions to provide that the AUA will pay the ABST that Leeward is required to charge under the ABST Act. These written modifications of the Contract's tax payment provisions are binding upon the AUA, and remove the AUA's right to seek repayment under the Contract.

The Partial Final Award manifestly disregards the law as the Tribunal failed to apply the doctrines of *res judicata*, collateral estoppel, claim preclusion and issue preclusion to the AUA's ABST claim and Defective Work claims. Accordingly, the District Court's decision should be reversed and the Partial Final Award vacated.

## IV. THE PARTIAL FINAL AWARD IS NON-FINAL AND AMBIGUOUS

An arbitration award is enforceable under the FAA and the Convention only when it is final, particularly where the laws of the country in which the arbitration is conducted require finality. *See, e.g., Dworkin-Cosell Interair Courier Services, Inc. v. Avraham*, 728 F.Supp. 156, 161 (SDNY 1989). To be a final, an arbitration award:

> 'must be intended by the arbitrators to be their complete determination of all claims submitted to them' and 'an arbitrator award, to be final, must resolve all issues submitted to arbitration, and … it must resolve them definitely enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication,' including both liability and damages.

*Pearl Seas Cruises, LLC v. Irving Shipbuilding, Inc.*, 2001 U.S. Dist. LEXIS 87728, *5 (Dist. of Conn. 2011) (quoting *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 413-414 (2d Cir. 1980) and *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998)) Additionally, the laws of Antigua and Barbuda require that an arbitration award be final before it can be enforced. *See generally*, Antiguan Arbitration Act, Chapter 33 of the Laws of Antigua and Barbuda (A 438)

The Partial Final Award as rendered is non-final and ambiguous. (A 433-434) The Partial Final Award opens Leeward to double liability – payment of ABST to the AUA now and possible payment to the Antigua and Barbuda tax authorities at a later date. (*Id.*) Further, while it provides for the AUA to indemnify Leeward at some future date should Leeward be "later required by the Antigua and Barbuda tax authorities to account for, and pay to, the Antigua and Barbuda authorities ABST on this construction project," (*Id.*) the award completely fails to address the possibility that the Antigua and Barbuda tax authorities may

29

find that Leeward had no outstanding tax obligation on the project because it had already satisfied its obligations by paying ABST to contractors and vendors down the stream of commerce from it for services and materials purchased for the project. If Leeward were found to have properly paid all of its ABST taxes pursuant to the statute, it will have been improperly forced to refund the AUA ABST payments on the Project. This possibility leaves Leeward open to further litigation if it has to commence additional action against the AUA to recover the sums improperly paid. Neither the Tribunal nor the District Court apparently ever considered this possibility. As such, the District Court's decision should be reversed and the Partial Final award should be vacated.

## V.    THE AUA'S UNJUST ENRICHMENT CLAIM WAS NOT BEFORE THE TRIBUNAL

In his Dissenting Opinion, Arbitrator Romero points out that the Tribunal based its decision in favor of the AUA on its ABST claim on the theory of unjust enrichment which was outside the scope of the matters submitted to them for decision. (A 425-428)   Arbitrator Romero succinctly traces the pleadings to demonstrate that AUA did not have a claim of unjust enrichment before the Tribunal for decision. While AUA indicated that it was going to assert such a claim based on the "common law of Antigua and Barbuda, ", AUA's final pleading filed in August, 2013, makes no mention of unjust enrichment and thus, it dropped the claim. (A 877)

Further, without exploring the elements of a cause of action for unjust enrichment or even concluding that the AUA had established its entitlement to relief under this equitable theory, the Tribunal summarily concluded that Leeward failed to present any valid defense to a claim. (A 406) In basing their decision to award the AUA EC\$3,614,522.41 in ABST repayments on a claim that the AUA dropped in its final amended pleading in August, 2013, the Tribunal violated Leeward's due process and exceeded its authority. (A 425-428)

However, the biggest problem with the Tribunal's decision to award judgment on the AUA's unjust enrichment claim and the District Court's decision to confirm it is that both completely failed to apply Antiguan law to the matter as required by the parties' contract. Had either considered Antiguan precedent on the issue, they both would have concluded that the AUA's unjust enrichment claim was outside the Tribunal's purview. Under Antiguan law, a claim for unjust enrichment is an equitable, restitution claim that is independent of any contract. *See Fibrosa Spolka Akcyina v. Fairbarin Lawson Combe Barbour Ltd,* [1943] A.C. 32, 61 (holding that the obligation to refund or repay a mistaken payment on the basis of unjust enrichment is imposed by law and not by contract) (A 742); *Westdeutsche Landesbank Girozentrade v. Islington London BC,* [1996] 2 WLR 802(HL) (holding that the obligation to refund or repay a mistaken payment on the basis of unjust enrichment is imposed by law and not by contract) (A 843); *see*

31

*also*, *Superintendent of Ins. v. Ochs*, 377 F.3d 209, 213 (2d Cir. 2004) ("[U]njust enrichment would only exist where no prior agreement govern the rights of the parties …'[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.'") (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382 (1987)) To the extent that the AUA's ABST claim arises out of a claim for unjust enrichment, it cannot "arise under" or relate to the Contract under Antiguan law and is not subject to the parties' arbitration agreement. *See* Section 4.6 of the General Conditions to the Contract (A 073) Awarding the AUA damages based on a theory of unjust enrichment, is outside the scope of the Tribunal's authority in violation of the FAA and the Convention. Accordingly, the District Court's decision should be reversed and the Partial Final Award should be vacated.

## CONCLUSION

For the foregoing reasons, the decision of the District Court should be reversed, and the matter remanded with directions to modify the Award by vacating those elements in which the Tribunal exceeded its authority, manifestly disregarded the law and failed to render a non-final and unambiguous award.

Dated:        August 25, 2015

Respectfully submitted,

**LEWIS & GREER, P.C.**
510 Haight Avenue, Suite 202
Poughkeepsie, New York 12603
(845) 454-1200

By: _____
Attorney for Appellant

33

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(A)</u>

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 7,682 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-Point font.

**LEWIS & GREER, P.C.**

By: _____
Veronica A. McMillan, Esq.
510 Haight Avenue, Suite 202
Poughkeepsie, New York 12603
(845) 454-1200
vamcmillan@lewisgreer.com

*Attorney for Respondent-Appellant*
*Leeward Construction Company, Ltd.*

Dated:      August 25, 2015

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the Brief and Special Appendix of Respondent-Appellant Leeward Construction Company, Ltd. with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the Appellate CM/ECF system on August 25, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

LEWIS & GREER, P.C.

By: _____

Veronica A. McMillan, Esq.
510 Haight Avenue, Suite 202
Poughkeepsie, New York 12603
(845) 454-1200
vamcmillan@lewisgreer.com

*Attorney for Respondent-Appellant*
*Leeward Construction Company, Ltd.*

Dated:     August 25, 2015

**SPECIAL APPENDIX**

# SPECIAL APPENDIX TABLE OF CONTENTS

Opinion & Order, Dated May 1, 2015 ............................................................. SA001

Civil Judgment, Dated May 5, 2015 ............................................................. SA021

9 USCS §10 ............................................................................................... SA023

USCS Foreign Arbitration Awards
    Convention on the Recognition and Enforcement of Foreign
    Arbitral Awards ..................................................................... SA024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
AMERICAN UNIVERSITY OF ANTIGUA          :
COLLEGE OF MEDICINE,
                          Petitioner,   :        14cv8410 (DLC)

            -v-                         :        OPINION & ORDER
                                        :
LEEWARD CONSTRUCTION COMPANY, LTD.,     :
                          Respondent.   :
------------------------------------------X

APPEARANCES

For petitioners American University of Antigua College of
Medicine:

Leonard A. Sclafani
LAW OFFICES OF LEONARD A. SCLAFANI, ESQ.
1 Battery Park Plaza, 33rd Floor
New York, NY 10004

For respondent Leeward Construction Company, Ltd.:

Veronica A. McMillan
J. Scott Greer
LEWIS & GREER, P.C.
510 Haight Avenue, P.O. Box 2990
Poughkeepsie, NY 12603

DENISE COTE, District Judge:

     Petitioner American University of Antigua College of

Medicine ("AUA") moves to confirm an international arbitral

award against respondent Leeward Construction Company, Ltd.

("Leeward"). Leeward cross-moves to deny enforcement of,

vacate, or modify the arbitral award, arguing that the award is

non-final and ambiguous; that the Arbitration Tribunal

("Tribunal") exceeded its authority; and that the award

constitutes a "manifest disregard for the law." AUA also moves

for an order of attachment and a preliminary injunction regarding a related arbitral award against it that is currently on appeal.  For the reasons stated below, AUA's petition to confirm is granted; Leeward's motion to deny enforcement of, vacate, or modify the award is denied; and AUA's motion for an order of prejudgment attachment is denied as moot.

## BACKGROUND

AUA and Leeward are corporations organized under the laws of Antigua and Barbuda.  On September 25, 2008, AUA and Leeward executed a contract for the construction of a medical school ("Contract").  Two sections of the Contract set out arbitration provisions (the "Arbitration Provisions"): Section 4.6.1, which provided that "[a]ny claim arising out of or related to the Contract . . . shall . . . be subject to arbitration," and Section 4.6.2, which provided that any arbitration "shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect."

The medical school was constructed in the Antigua and Barbuda Free Trade and Processing Zone, where certain business activities were by law exempt from Antigua and Barbuda Sales Tax ("ABST").  During the period of construction, it was unclear whether AUA's construction project would be subject to ABST; if so, that tax would be paid by Leeward, which was transacting

2

business in the Zone.  Accordingly, with each invoice submitted
to AUA, Leeward included a sum -- 15% of the amount invoiced --
intended to pay any ABST assessed against it.  Ultimately, AUA
paid $1,338,712 to Leeward for this purpose.[1]

Unbeknownst to AUA, however, Leeward never filed ABST tax
returns with nor remitted corresponding ABST tax to the tax
authorities at any time during or after construction.  In
December 2009, after it had paid Leeward the amount above, AUA
concluded on the basis of its communications with the government
that the construction project was, in fact, exempt from ABST.
Although informed at that time that the proper recourse was to
recoup the ABST amounts it had paid to its vendors from those
vendors, including Leeward, AUA intended to seek a tax refund
from the government because it believed that its vendors,
including Leeward, had been paying ABST to the government all
along.  By the end of 2009, Leeward had ceased all business
operations.

---

[1] The sums at issue were all paid in East Caribbean Dollars
("XCD") and the Tribunal awarded damages in XCD.  The parties'
most recent motions differ in their conversions to U.S. Dollars.
Dollar values here will be calculated using the exchange rate as
of April 21, 2015, which is 2.7 XCD to the dollar.  XE Currency
Converter,
http://www.xe.com/currencyconverter/convert/?Amount=1&From=XCD&T
o=USD (last visited April 21, 2015).

**SA003**

I. The First Arbitration

In February 2011, Leeward initiated arbitration proceedings against AUA before the American Arbitration Association, alleging that AUA breached the Contract by withholding money owed Leeward for elements of the project AUA unilaterally struck from the construction plans; that it was due a "mobilization" fee; and that it was owed penalties for delays occasioned by AUA (the "First Arbitration").   AUA counterclaimed for liquidated delay damages.   During the course of the arbitration, AUA discovered an apparent mistake in Leeward's ABST invoicing -- one that would have benefitted Leeward in the amount of $30,762.80 -- and brought it to Leeward's attention.   In June 2012, the arbitration tribunal awarded Leeward $976,421.37 plus 7% interest per annum and awarded AUA $58,500 in liquidated damages plus 7% interest per annum (the "First Award").[2]   The tribunal refused, however, to include the apparent $30,762.80 discrepancy in its award.

Leeward subsequently sought confirmation of the First Award in the United States District Court for the Southern District of New York.   On March 26, 2013, the Hon. Judge Lewis A. Kaplan granted Leeward's petition, Leeward Const. Co. v. Am. Univ. of

---

[2] The First Award was modified in August of 2012 to correct clerical errors.

4

**SA004**

Antigua-Coll. of Med., No. 12cv6280 (LAK), 2013 WL 1245549, at
*5 (S.D.N.Y. Mar. 26, 2013), entering judgment for Leeward in
the amount of $966,026.79.  AUA filed a notice of appeal on
April 29.  On May 8, 2013, the parties executed an agreement
staying enforcement of Leeward's judgment for the First Award
(the "Stay Agreement") pending resolution of a second
arbitration proceeding begun earlier that year (the "Second
Arbitration").  Under the terms of that Agreement, AUA filed a
payment bond in the amount of $1,073,000 to secure Leeward's
judgment and waived its appellate rights as to the First Award.

      Almost immediately, Leeward repudiated the Stay Agreement,
claiming AUA had not adequately informed it of the nature of
AUA's counterclaims in the Second Arbitration, and obtained a
Writ of Execution.  On June 29, AUA sought a stay of Leeward's
judgment from the court, pursuant to either the Stay Agreement
or the court's inherent powers.  Before this motion was
resolved, however, the parties entered into a Standstill
Agreement, by which terms AUA withdrew its motion to stay and
converted its existing bond into a supersedeas bond, and Leeward
agreed not to seek enforcement of the First Award pending the
outcome of AUA's appeal.  On August 13, 2013, the court entered
a Stipulation and Consent Order staying enforcement of the
judgment.  Pursuant to Local Rule 42.1, the parties agreed that
AUA would withdraw its appeal without prejudice and subject to

reinstatement.  AUA reinstated its appeal on February 2, 2015, and appellate briefs were fully submitted on March 30.  Oral argument has not yet been scheduled.

II. The Second Arbitration

On February 7, 2013, Leeward commenced a Second Arbitration proceeding against AUA to recover the purportedly mis-tabulated $30,762.80 it was unable to obtain in the First Arbitration ("Leeward's ABST Claim").  On February 27, AUA counterclaimed, seeking to recover the $1,338,712 it had paid to Leeward for ABST on the grounds of fraud or misrepresentation, mutual mistake, and unjust enrichment ("AUA's ABST Counterclaim").  AUA subsequently amended its answer to include a counterclaim seeking $978,685.18 in damages for numerous alleged construction defects ("Defects Counterclaim"), and on August 13 filed a further amended answer.  This final answer did not explicitly mention AUA's allegation of unjust enrichment.

The parties agreed to submit their claims to the arbitration tribunal ("Tribunal") for decision, in an arbitral equivalent of a motion for summary judgment.  In its motion, Leeward asserted a cornucopia of defenses to AUA's ABST Counterclaim, including that it was barred by res judicata, that AUA lacked standing to bring it, that the doctrine of waiver applied, and that the claim was not encompassed by the Arbitration Provisions.  AUA and Leeward submitted lengthy

memoranda of law to the Tribunal; both parties' memoranda addressed whether a claim of unjust enrichment could be maintained. Ultimately, in a decision of February 6, 2014, the Tribunal concluded that it could not decide the issues on the basis of motion practice and, at the request of the parties, held day-long oral argument in Miami, Florida on April 28. Among the issues addressed at oral argument was AUA's claim of unjust enrichment.

On September 18, 2014, the Tribunal issued a decision and partial final award (the "Second Award") denying Leeward's ABST Claim on the merits, rejecting Leeward's defenses to AUA's ABST counterclaim, and granting AUA's ABST Counterclaim in the amount of $1,338,712. It explained that the Second Award was granted on AUA's claim of unjust enrichment. The Tribunal declined, however, to decide AUA's Defects Counterclaim.

On October 16, AUA petitioned this Court to confirm the Second Award pursuant to 9 U.S.C. § 201. Leeward filed its opposition on December 11, cross-moving to deny enforcement of, vacate, and/or modify the Second Award. The motions were fully submitted on January 9, 2015.

On February 17, asserting that Leeward is effectively a shell corporation and that its only asset is the judgment on the First Award, AUA moved for an order of attachment of Leeward's First Award pursuant to Fed. R. Civ. P. 64 and New York Civil

7

Practice Law and Rules §§ 6212 & 7502.  AUA moved as well for a
preliminary injunction to enforce the parties' Stay Agreement of
May 8, 2013.  That motion was fully submitted on March 13, 2015.


## DISCUSSION

Both the petition for confirmation and cross-motion to
vacate or modify invoke the provisions of the Convention on the
Recognition and Enforcement of Foreign Arbitral Awards, June 10,
1958, 21 U.S.T. 2517 ("New York Convention"), as implemented by
the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201 et seq.  The
New York Convention applies "to the recognition and enforcement
of arbitral awards made in the territory of a State other than
the State where the recognition and enforcement of such awards
are sought" and "arbitral awards not considered as domestic
awards in the State where their recognition and enforcement are
sought."  New York Convention, art. I(1).

Confirming an arbitration award "ordinarily is a summary
proceeding that merely makes what is already a final arbitration
award a judgment of the court."  Citigroup, Inc. v. Abu Dhabi
Inv. Auth., 776 F.3d 126, 132 (2d Cir. 2015) (citation omitted).
The FAA provides that a court confronted with a motion to
confirm an arbitral award governed by the New York Convention
"shall confirm the award unless it finds one of the grounds for
refusal or deferral of recognition or enforcement of the award

specified in the said Convention." 9 U.S.C. § 207.  The New

York Convention provides seven defenses to enforcement, and

"[g]iven the strong public policy in favor of international

arbitration, the party seeking to avoid summary confirmance of

an arbitral award has the heavy burden of proving that one of

the seven defenses applies." VRG Linhas Aereas S.A. v.

MatlinPatterson Global Opportunities Partners II L.P., 717 F.3d

322, 325 (2d Cir. 2013) (citation omitted).  Among other things,

the Convention allows the defense that an arbitration "award

deals with a difference not contemplated by or not falling

within the terms of the submission to arbitration, or it

contains decisions on matters beyond the scope of the submission

to arbitration," New York Convention, art. V(2)(c), and that

"[t]he party against whom the award is invoked . . . was . . .

unable to present his case," id., art. V(2)(b).

Where an award "was entered in the United States, however,

the domestic provisions of the FAA also apply." Scandinavian

Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d

60, 71 (2d Cir. 2012).  Among the FAA's grounds for vacatur is

that the "arbitrators exceeded their powers, or so imperfectly

executed them that a mutual, final, and definite award upon the

subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

In addition, courts have "recognized a judicially-created

ground, namely that an arbitral decision may be vacated when an

9

**SA009**

arbitrator has exhibited a manifest disregard of law." <u>Jock v. Sterling Jewelers Inc.</u>, 646 F.3d 113, 121 (2d Cir. 2011) (citation omitted). This ground has been "consistently accorded the narrowest of readings." <u>Id.</u> at 122 (citation omitted).

Leeward opposes confirmation of and seeks to vacate the Second Arbitration Award on three grounds. First, it argues that the Tribunal exceeded its authority, in violation of Article (V)(1)(c) of the Convention and 9 U.S.C. 10(a)(4).[3] Second, it argues that the award is "non-final and ambiguous" and thus does not satisfy the condition of finality under 9 U.S.C. 10(a)(4). Third, it argues that the Tribunal acted with "manifest disregard for the law." None of these arguments has merit.

I. The Tribunal "Exceeded Its Authority."

Leeward first argues that the Tribunal exceeded its powers, citing the FAA, 9 U.S.C. 10(a)(4), and Article V of the New York Convention. Strictly speaking, only the FAA applies: "That an arbitration panel exceeded its powers is not . . . one of the

---

[3] The Tribunal's Second Award decision states as follows: "The undersigned arbitrators hereby certify that, for the purposes of Article 1 of the New York Convention . . . this Partial Final Award was made as in St. John, Antigua, Antigua and Barbuda." Both parties assume that the FAA's statutory defenses apply, and thus assume that the Second Award was entered in the United States. The Court therefore understands this language not to establish otherwise.

10

**SA010**

seven exclusive grounds for denying enforcement under the New York Convention." Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 92 (2d Cir. 2005). Under the FAA, a party seeking to overturn an award because the arbitrator has exceeded her powers "bears a heavy burden," Oxford Health Plans LLC v. Sutter, 133 S. Ct. 2064, 2068 (2013), and "vacatur under the excess-of-powers standard is appropriate only in the narrowest of circumstances." Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv., 754 F.3d 109, 113 (2d Cir. 2014) (citation omitted). "It is not enough to show that the arbitrator committed an error -- or even a serious error." Id. (citing Sutter, 133 S. Ct. at 2068). The "sole question . . . is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." Sutter, 133 S. Ct. at 2068. Leeward argues that the Tribunal exceeded its powers in two ways.

A. Unjust Enrichment Claim Improperly Presented

Leeward contends that the Tribunal erroneously awarded damages on the basis of an unjust enrichment claim that, for two reasons, was not properly presented. This, it contends, exceeded its powers.

1. AUA Waived Its Unjust Enrichment Claim.

First, Leeward invokes Article V(1)(b) of the New York Convention to argue that the Tribunal "violated Leeward's due

11

process" when it decided the AUA unjust enrichment claim because
AUA "waived" that claim by dropping it from its final pleading.
Article V(2)(b) permits vacatur if "[t]he party against whom the
award is invoked . . . was . . . unable to present his case,"
New York Convention, art. V(2)(b).  This provision "essentially
sanctions the application of the forum state's standards of due
process," and accordingly "due process rights are entitled to
full force under the Convention as defenses to enforcement."
<u>Iran Aircraft Indus. v. Avco Corp.</u>, 980 F.2d 141, 145 (2d Cir.
1992) (citation omitted).  The Tribunal concluded that AUA
"formulated its counterclaim such that it includes a claim of
unjust enrichment . . . and the Parties' subsequent oral and
written submissions have addressed this unjust enrichment
claim."  A review of the factual record discloses no reason to
disagree with the Tribunal.  Leeward has failed to establish
that it was denied "an opportunity to be heard at a meaningful
time and in a meaningful manner."  <u>Iran Aircraft</u>, 980 F.2d at
146 (citation omitted).

    2. The Tribunal Lacked Power to Decide the Claim.

    Second, Leeward argues that because unjust enrichment is an
equitable claim, it cannot by definition be a dispute "arising
out of or related to the Contract."[4]  Leeward is wrong.  To begin

-------

[4] Although the New York Convention does not provide an "excess-
of-powers" defense, it does allow a defense that arbitrators

with, the Tribunal's conclusion that the claim was encompassed by the Arbitration Provisions is accorded great deference.  See Schneider v. Kingdom of Thailand, 688 F.3d 68, 73 (2d Cir. 2012).  Moreover, under broad arbitration clauses, claims of unjust enrichment predicated on parties' obligations under a contract are presumptively arbitrable.  See, e.g., JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 167, 183 (2d Cir. 2004) (holding common-law claim of unjust enrichment was encompassed by clause providing for arbitration of "[a]ny and all differences and disputes of whatsoever nature arising out of" the agreement); Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 856 (2d Cir. 1987) (holding that unjust enrichment claim "predicated on the defendants' contractual duty to bill . . . accurately . . . arises under" contract).  A clause, like these Arbitration Provisions, that "submit[s] to arbitration 'any claim or controversy arising out of or relating to the agreement' is the paradigm of a broad clause," Collins & Aikman Products Co. v. Bldg. Sys., Inc., 58 F.3d 16, 20 (2d Cir. 1995), and AUA's claim -- that Leeward improperly invoiced and

---

decided matters "not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration." New York Convention, art. V(2)(c).  Although Leeward does not cite this provision, it is assumed that Leeward meant to invoke it.

13

**SA013**

collected money it was not legally owed -- is clearly predicated on Leeward's obligations under the contract.  The unjust enrichment claim was properly subject to arbitration.

B. The Tribunal Improperly "Enforced" Tax Laws.

Leeward also argues that, in awarding damages for the ABST money it collected from AUA, the Tribunal exceeded its authority by engaging in "tax law enforcement -- a right only granted to the Antigua and Barbuda tax authorities."  But AUA is not seeking to collect taxes from Leeward on behalf of the Antiguan government.  This is not a suit to enforce a tax judgment or obtain a tax refund, as would be presumptively barred under the "revenue rule."  See United States v. Federative Republic of Brazil, 748 F.3d 86, 92 n.6 (2d Cir. 2014) ("The 'revenue rule' . . . provides that courts of one sovereign will not enforce final tax judgments or unadjudicated tax claims of other sovereigns." (citation omitted)).  Rather, AUA is seeking the return of money it paid to Leeward, and which Leeward has to date retained.  The money may have been earmarked for ABST payments, but that does not make it an ABST payment.  And while the Tribunal was required to review provisions of the ABST law in rendering its decision, this does not make the arbitrator -- or, for that matter, the Court -- a de facto Antigua and Barbuda tax collector.  This matter clearly fell within the scope of the Arbitration Clause, and the Tribunal offered an adequate

14

**SA014**

explanation for its decision.  That decision will not be disturbed.

II. The Award Is "Non-Final and Ambiguous."

Leeward also argues that the Second Arbitration Award is not a "final decision" as required by 9 U.S.C. § 10(a)(4). "[A]n arbitration award is final if it resolves all issues submitted to arbitration, and determines each issue fully so that no further litigation is necessary to finalize the obligations of the parties."  Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc., 157 F.3d 174, 177 (2d Cir. 1998) (citation omitted).  Moreover, the decision "must resolve [the issues] definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication."  Id. at 176.  This standard "does not require that the arbitration award resolve every outstanding issue that might arise in later litigation between the parties."  Id. at 177.  Indeed, an award that "finally and conclusively dispose[s] of a separate and independent claim . . . . may be confirmed although [it does] not dispose of all the claims that were submitted to arbitration."  Zeiler v. Deitsch, 500 F.3d 157, 169 (2d Cir. 2007) (citing Metallgesellschaft A.G. v. M/V Capitan Constante, 790 F.2d 280, 283 (2d Cir. 1986)).

Leeward claims that the Second Arbitration Award is non-final and ambiguous because it leaves Leeward open to potential

15

**SA015**

"double liability" if the Antigua and Barbuda tax authorities
end up seeking ABST from them after all.  Leaving aside that
this speculation is unsupported by the factual record, the Award
includes an indemnification provision to shield Leeward against
exactly such an unlikely contingency.  Providing for possible
future occurrences does not make the award any less definite or
final.  Although partial, the Second Award finally and
conclusively disposes of the two claims now before the Court.
The Tribunal made findings of fact and conclusions of law
regarding liability and awarded damages accordingly.  It
preemptively addressed Leeward's "double liability" scenario
with its indemnification provision.  The only issues left
unresolved are AUA's separate and independent counterclaim
alleging construction defects and awards of attorneys' fees and
costs, if any.  As Zeiler and Metallgesellschaft make clear,
this is no bar to confirmation.

III. The Tribunal Showed "Manifest Disregard for the Law."

     Finally, Leeward argues that the Tribunal acted with a
"manifest disregard for the law" because it "completely ignored"
the doctrines of res judicata and contractual waiver and
modification.  Again, it is wrong.  "[A]wards are vacated on
grounds of manifest disregard only in those exceedingly rare
instances where some egregious impropriety on the part of the
arbitrator is apparent."  T.Co Metals, LLC v. Dempsey Pipe &

**SA016**

Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010) (citation omitted).  The disregard must be "more than error or misunderstanding with respect to the law" or an "arguable difference regarding the meaning or applicability of laws urged upon an arbitrator," and "[t]he award should be enforced . . . if there is a barely colorable justification for the outcome reached."  Id. (citation omitted).  "[T]o apply the manifest disregard standard, the court must consider, first, whether the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable, and, second, whether the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it."  Schwartz v. Merrill Lynch & Co., 665 F.3d 444, 452 (2d Cir. 2011) (citation omitted).[5]

Leeward's argument is unavailing.  The doctrines of res judicata and waiver and modification are certainly well defined, explicit, and clearly applicable.  The Tribunal obviously knew that these doctrines existed because, in its decision, it explicitly rejected applying them on the grounds that Leeward's

---

[5] This standard has also been described in this Circuit as having "three components": whether the law was clear and applicable; whether the law was improperly applied, leading to an erroneous outcome; and whether the arbitrator actually knew of the law and its applicability to the matter.  See, e.g., T.Co Metals, 592 F.3d at 339.

arguments were unpersuasive.  And the Tribunal manifestly did not "ignore" or "pay no attention to" these doctrines; instead, it explicitly considered and rejected applying both doctrines, and in each case had more than "barely colorable justification" to do so.

Arbitrators decide the claim-preclusive effect of arbitration awards that have been confirmed by federal courts. Citigroup, 776 F.3d at 133-34.  It was thus well within the Tribunal's authority to decide the applicability of res judicata.  Here, the Tribunal determined that Leeward's res judicata arguments were "unconvincing" because Leeward's proposed standard -- that "any claim arising under the same transaction as the claims debated in the Prior Proceedings should be precluded" -- was "unpersuasive."[6]  The parties' memoranda heatedly, and at some length, contested whether Leeward's asserted res judicata standard was consistent with governing law.  The Tribunal's discussion indicates that it agreed with AUA's position.  This is sufficient to require enforcement of the Tribunal's decision.

---

[6] The Tribunal also explicitly rejected Leeward's "additional arguments that the AUA's ABST arguments should have been submitted before -- at the time of the Prior Proceeding or even before that -- and that Leeward's defense of res judicata should prevail even in light of its own ABST claim."

The Tribunal also offered sufficient justification for its rejection of Leeward's waiver and modification claims.  After describing the nature of Leeward's arguments, the Tribunal concluded that Leeward had "not established sufficient facts to prove waiver."  The Tribunal did not "completely ignore" the doctrine's applicability; it explicitly found that it could not be applied on these facts.  As to modification, because the Tribunal's conclusion rested on the ground of unjust enrichment, the Tribunal did not feel it necessary to address modification or any "other defenses to alternative avenues" of argument because they would "lead to the same result."  Leeward disagrees, but the belief that the Tribunal was wrong and a desire to relitigate the decision cannot transform arguable conclusions of law into "manifest disregard."

CONCLUSION

AUA's October 16, 2014 petition to confirm the Second Award is granted, and its motion for an order of attachment and preliminary injunction is denied as moot.  Leeward's December 11, 2014 cross-motion to deny enforcement, vacate, or modify the arbitral award is denied.  Accordingly, the Clerk of Court is directed to enter judgment in the amount of $1,338,712 and to close the case.

SO ORDERED:

Dated:    New York, New York
          May 1, 2015

                    _____
                          DENISE COTE
                United States District Judge

20

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE,

USDC SDNY

DOCUMENT

ELECTRONICALLY FILED 05/05/2015

                              Petitioner,

                                          14 **CIVIL** 8410 (DLC)

      -against-

                                                **JUDGMENT**

LEEWARD CONSTRUCTION COMPANY, LTD.,
                              Respondent.
-------------------------------------------------------------X

Petitioner American University of Antigua College of Medicine ("AUA") having moved to confirm an international arbitral award against respondent Leeward Construction Company, Ltd. ("Leeward"). Leeward having cross-moved to deny enforcement of, vacate, or modify the arbitral award, arguing that the award is non-final and ambiguous; that the Arbitration Tribunal ("Tribunal") exceeded its authority; and that the award constitutes a "manifest disregard for the law." AUA also moves for an order of attachment and a preliminary injunction regarding a related arbitral award against it that is currently on appeal,   and the matter having been brought before the Honorable Denise L. Cote, United States District Judge, and the Court, on May 1, 2015, having issued its Opinion & Order (Doc. #51) granting AUA's October 16, 2014 petition to conform the Second Award, and denying its motion for an order of attachment and preliminary injunction as moot; and denying Leeward's December 11, 2014 cross-motion to deny enforcement, vacate, or modify the arbitral award; and directing the Clerk of Court to enter judgment in the amount of $1,338,712 and to close the case, it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Opinion & Order dated May 1, 2015,  AUA's October 16, 2014 petition to confirm the Second Award is granted, and its motion for an order of attachment and preliminary injunction is

**SA021**

denied as moot.  Leeward's December 11, 2014 cross-motion to deny enforcement, vacate, or modify the arbitral award is denied; judgment is entered in the amount of $1,338,712; accordingly, the case is closed.

**Dated:** New York, New York
          May 5, 2015

RUBY J. KRAJICK

Clerk of Court

BY:    *K. Mango*

Deputy Clerk

## *9 USCS § 10*

Current through PL 114-49, approved 8/7/15

*United States Code Service - Titles 1 through 54* > *TITLE 9. ARBITRATION* > *CHAPTER 1. GENERAL PROVISIONS*

## § 10. Same; vacation; grounds; rehearing

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--

    (1) where the award was procured by corruption, fraud, or undue means;

    (2) where there was evident partiality or corruption in the arbitrators, or either of them;

    (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

    (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(b) If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

(c) The United States district court for the district wherein an award was made that was issued pursuant to section 580 of title 5 may make an order vacating the award upon the application of a person, other than a party to the arbitration, who is adversely affected or aggrieved by the award, if the use of arbitration or the award is clearly inconsistent with the factors set forth in section 572 of title 5.

## History

(July 30, 1947, ch 392, § 1,*61 Stat. 672*; Nov. 15, 1990, *P.L. 101-552*, § 5, *104 Stat. 2745*; Aug. 26, 1992, *P.L. 102-354*, § 5(b)(4), *106 Stat. 946*; May 7, 2002, *P.L. 107-169*, § 1, *116 Stat. 132*.)

**Prior law and revision:**

This section is based on Act Feb. 12, 1925, ch 213, § 10, *43 Stat. 885* (§ 10 of former Title 9).

**Annotations**

## Notes

**Amendments:**

**1990** . Act Nov. 15, 1990, designated the existing provisions as subsec. (a) and, in such subsection, in the introductory matter, substituted "In any" for "In either", redesignated paras. (a)-(e) as paras. (1)-(5), respectively, and added subsec. (b)

**1992** . Act Aug. 26, 1992, in subsec. (b), substituted "580" for "590" and "572" for "582".

**2002** . Act May 7, 2002, in subsec. (a), indented paras. (1)-(4) and, in paras. (1) and (2), substituted "where" for "Where" and substituted the concluding semicolon for a period, in para. (3), substituted "where" for "Where" and substituted "; or" for a period, and, in para. (4), substituted "where" for "Where"; redesignated subsec. (b) as subsec. (c); and redesignated para. (5) of subsec. (a) as new subsec. (b) and, in such subsection, substituted "If an award" for "Where an award" and inserted a comma after "expired".

VERONICA MCMILLAN

### *USCS Foreign Arb Awards*

Current through PL 114-49, approved 8/7/15

**USCS - *International Conventions* > *CONVENTION ON THE RECOGNITION AND ENFORCEMENT OF FOREIGN ARBITRAL AWARDS***

Article I

1. This Convention shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal. It shall also apply to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought.

2. The term "arbitral awards" shall include not only awards made by arbitrators appointed for each case but also those made by permanent arbitral bodies to which the parties have submitted.

3. When signing, ratifying or acceding to this Convention, or notifying extension under article X hereof, any State may on the basis of reciprocity declare that it will apply the Convention to the recognition and enforcement of awards made only in the territory of another Contracting State. It may also declare that it will apply the Convention only to differences arising out of legal relationships, whether contractual or not, which are considered as commercial under the national law of the State making such declaration.

Article II

1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

2. The term "agreement in writing" shall include not only awards an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.

3. The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

Article III Each Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in the following articles. There shall not be imposed substantially more onerous conditions or higher fees or charges on the recognition or enforcement of arbitral awards to which this Convention applies than are imposed on the recognition or enforcement of domestic arbitral awards.

Article IV

1. To obtain the recognition and enforcement mentioned in the preceding article, the party applying for recognition and enforcement shall, at the time of the application, supply:

(a) The duly authenticated original award or a duly certified copy thereof;

(b) The original agreement referred to in article II or a duly certified copy thereof.

2. If the said award or agreement is not made in an official language of the country in which the award is relied upon, the party applying for recognition and enforcement of the award shall produce a translation of these documents into such language. The translation shall be certified by an official or sworn translator or by a diplomatic or consular agent.

Article V

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

VERONICA MCMILLAN

## SA024

Case 15-1595, Document 48, 08/27/2015, 1586777, Page69 of 71

USCS Foreign Arb Awards

(a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

Article VIf an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V(1)(e), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security.

Article VII

1. The provisions of the present Convention shall not affect the validity of multilateral or bilateral agreements concerning the recognition and enforcement of arbitral awards entered into by the Contracting States nor deprive any interested party of any right he may have to avail himself of an arbitral award in the manner and to the extent allowed by the law or the treaties of the country where such award is sought to be relied upon.

2. The Geneva Protocol on Arbitration Clauses of 1923 and the Geneva Convention on the Execution of Foreign Arbitral Awards of 1927 shall cease to have effect between Contracting States on their becoming bound and to the extent that they become bound, by this Convention.

Article VIII

1. This Convention shall be open until 31 December 1958 for signature on behalf of any Member of the United Nations and also on behalf of any other State which is or hereafter becomes a member of any specialized agency of the United Nations, or which is or hereafter becomes a party to the Statute of the International Court of Justice, or any other State to which an invitation has been addressed by the General Assembly of the United Nations.

2. This Convention shall be ratified and the instrument of ratification shall be deposited with the Secretary-General of the United Nations.

Article IX

1. This Convention shall be open for accession to all States referred to in article VIII.

2. Accession shall be effected by the deposit of an instrument of accession with the Secretary-General of the United Nations.

VERONICA MCMILLAN

USCS Foreign Arb Awards

Article X

1. Any State may, at the time of signature, ratification or accession, declare that this Convention shall extend to all or any of the territories for the international relations of which it is responsible. Such a declaration shall take effect when the Convention enters into force for the State concerned.

2. At any time thereafter any such extension shall be made by notification addressed to the Secretary-General of the United Nations and shall take effect as from the ninetieth day after the day of receipt by the Secretary-General of the United Nations of this notification, or as from the date of entry into force of the Convention for the State concerned, whichever is the later.

3. With respect to those territories to which this Convention is not extended at the time of signature, ratification or accession, each State concerned shall consider the possibility of taking the necessary steps in order to extend the application of this Convention to such territories, subject, where necessary for constitutional reasons, to the consent of the Governments of such territories.

Article XIIn the case of a federal or non-unitary State, the following provisions shall apply:

(a) With respect to those articles of this Convention that come within the legislative jurisdiction of the federal authority, the obligations of the federal Government shall to this extent be the same as those of Contracting States which are not federal States;

(b) With respect to those articles of this Convention that come within the legislative jurisdiction of constituent states or provinces which are not, under the constitutional system of the federation, bound to take legislative action, the federal Government shall bring such articles with a favourable recommendation to the notice of the appropriate authorities of constituent states or provinces at the earliest possible moment;

(c) A federal State Party to this Convention shall, at the request of any other Contracting State transmitted through the Secretary-General of the United Nations, supply a statement of the law and practice of the federation and its constituent units in regard to any particular provision of this Convention, showing the extent to which effect has been given to that provision by legislative or other action.

Article XII

1. This Convention shall come into force on the ninetieth day following the date of deposit of the third instrument of ratification or accession.

2. For each State ratifying or acceeding to this Convention after the deposit of the third instrument of ratification or accession, this Convention shall enter into force on the ninetieth day after deposit by such State of its instrument of ratification or accession.

Article XIII

1. Any Contracting State may denounce this Convention by a written notification to the Secretary-General of the United Nations. Denunciation shall take effect one year after the date of receipt of the notification by the Secretary-General.

2. Any State which has made a declaration or notification under article X may, at any time thereafter, by notification to the Secretary-General of the United Nations, declare that this Convention shall cease to extend to the territory concerned one year after the date of the receipt of the notification by the Secretary-General.

3. This Convention shall continue to be applicable to arbitral awards in respect of which recognition or enforcement proceedings have been instituted before the denunciation takes effect.

Article XIVA Contracting State shall not be entitled to avail itself of the present Convention against other Contracting States except to the extent that it is itself bound to apply the Convention.

Article XVThe Secretary-General of the United Nations shall notify the States contemplated in article VIII of the following:

(a) Signatures and ratifications in accordance with article VIII;

VERONICA MCMILLAN

**SA026**

USCS Foreign Arb Awards

(b) Accessions in accordance with article IX;

(c) Declarations and notifications under articles I, X and XI;

(d) The date upon which this Convention enters into force in accordance with article XII;

(e) Denunciations and notifications in accordance with article XIII.

Article XVI

1. This Convention, of which the Chinese, English, French, Russian and Spanish texts shall be equally authentic, shall be deposited in the archives of the United Nations.

2. The Secretary-General of the United Nations shall transmit a certified copy of this Convention to the States contemplated in article VIII.

**Annotations**

## History; Ancillary Laws and Directives

**References in text:**

The "Geneva Protocol on Arbitration Clauses of 1923", referred to in this Convention, is the protocol done on September 24, 1923 (27 LNTS 158)

The "Geneva Convention on the Execution of Foreign Arbitral Awards of 1927", referred to in this Convention, is the Convention done on September 26, 1927 (27 LNTS 157; 92 LNTS 301).

The "Statute of the International Court of Justice", referred to in this Convention, is the statute annexed to the *Charter of the United Nations* (*59 Stat. 1055*; TS 993; *3 Bevans 1153*).

**Explanatory notes:**

The United Nations is the official depositary for this Convention.

**Other provisions:**

Parties to the *Convention on the Recognition and Enforcement of Foreign Arbitral Awards*.
Afghanistan [1] <,> [2]

Albania
  Algeria<1,2>
  Antigua and Barbuda<1,2>
  Argentina<1,2>
  Armenia<1,2>
  Australia [3]

Austria
  Azerbaijan
  Bahamas, The

---

[1]  With declaration that it will apply the convention to the recognition and enforcement of awards made only in the territory of another contracting state.

[2]  With declaration that it will apply the convention only to differences arising out of legal relationships, whether contractual or not, which are considered as commercial under its national law.

[3]  Extended to all the external territories for the international relations of which Australia is responsible.

VERONICA MCMILLAN

**SA027**