# 15-1595-CV

## United States Court of Appeals

*for the*

## Second Circuit

---

AMERICAN UNIVERSITY OF ANTIGUA-COLLEGE OF MEDICINE,

*Petitioner-Appellee,*

– v. –

LEEWARD CONSTRUCTION COMPANY, LTD.,

*Respondent-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

**BRIEF AND SUPPLEMENTAL APPENDIX OF
PETITIONER-APPELLEE AMERICAN UNIVERSITY OF
ANTIGUA-COLLEGE OF MEDICINE**

---

JAMES M. HIRSCHHORN
GREGORY E. REID
SILLS CUMMIS & GROSS P.C.
*Attorneys for Petitioner-Appellee
American University of
Antigua-College of Medicine*
101 Park Avenue
New York, New York 10178
(212) 643-7000

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Respondent American University of Antigua – College of Medicine states that it is a wholly-owned subsidiary of Manipal Education Americas LLC.  Manipal Education Americas is a wholly-owned subsidiary of Manipal Education (Mauritius) Pvt., Ltd., which is a wholly-owned subsidiary of Manipal Global Education Pvt. Ltd.  MEMG International, Ltd. is a parent corporation of Manipal Global Education Services Pvt. Ltd.

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................1

STATEMENT OF JURISDICTION...............................................3

COUNTER STATEMENT OF ISSUES PRESENTED FOR REVIEW ................3

STATEMENT OF THE CASE..........................................................4

    A.    Background .........................................................4

    B.    Procedural History...............................................6

        1.    The First Arbitration ....................................7

        2.    The Second Arbitration ................................8

SUMMARY OF ARGUMENT ........................................................12

ARGUMENT ........................................................................14

I.    THE STANDARD OF REVIEW .........................................14

II.    ALL OF THE ISSUES THAT THE ARBITRATORS DECIDED WERE WITHIN THEIR AUTHORITY AND THE SCOPE OF THE PARTIES' BROAD ARBITRATION CLAUSE.......................................17

    A.    AUA Was Not Seeking To Enforce The Tax Laws Of Antigua And Barbuda When It Sought The Return Of Money It Paid To Leeward Under The Contract, And Which Leeward Has Retained ................................................19

    B.    AUA's Unjust Enrichment Claim Was Properly Before the Tribunal ..............................................22

III.    THE AWARD WAS FULLY JUSTIFIED AND DOES NOT CONSTITUTE A "MANIFEST DISREGARD" OF THE LAW...............26

    A.    Res Judicata Does Not Bar AUA's Claim Because Issues Relating To ABST Were Outside The Scope Of The First Arbitration ...........................................28

    B.    AUA Did Not Waive Its Claim For Restitution By Paying The ABST Surcharge To Leeward ...............................32

IV.    THE AWARD IS UNAMBIGUOUS, CLEAR, AND FINAL....................34

CONCLUSION ........................................................36

-i-

## SUPPLEMENTAL APPENDIX TABLE OF CONTENTS

Affirmation of Douglas James McLaren, Deputy Commissioner of
    Inland Revenue dated November 4, 2013,
     Exhibit F to Affirmation of Leonard A. Sclafani
    Dated November 22, 2014                    SA1

Letter dated August 31, 2007 from Douglas James McLaren to
    American University of Antigua College of Medicine,
    (McLaren Affirmation Ex. 1)                SA3

Email from Lyle S. Novick to Jackie Williams dated November 17, 2009
    (McLaren Affirmation Ex. 2)                SA5

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*,
754 F.3d 109 (2d Cir. 2014)...............................................................................18

*American University of Antigua – College of Medicine v. Leeward
Construction Co., Ltd.*,
2015 U.S. Dist. LEXIS 57579 (S.D.N.Y May 1, 2015)..............................................4

*Applied Indus. Materials Corp. v. Ovalar Makine Ticaret VeSanayi A.S.*,
492 F.3d 132 (2d Cir. 2007)...............................................................................14

*Citigroup, Inc. v. Abu Dhabi Inv. Auth.*,
776 F.3d 126 (2d Cir. 2015)...............................................................................15

*Collins & Aikman Prods. Co. v. Building Sys.*,
58 F.3d 16 (2d Cir. 1995)...................................................................................25

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
333 F.3d 383 (2d. Cir. 2003)..............................................................................31

*Employers Ins. Co. of Wausau et al., v. One Beacon American Ins. Co. et al.*,
Case No. 13-1913 (1st Cir. Feb. 26, 2014)...........................................................28

*Genesco, Inc. v. T. Kakiuchi & Co.*,
815 F.2d 840 (2d Cir. 1987)...............................................................................24

*Iran Aircraft Indus. v. Avco Corp.*,
980 F.2d 141 (2d Cir. 1992)..........................................................................25, 26

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
387 F.3d 163 (2d Cir. 2004)...............................................................................24

*Jock v. Sterling Jewelers Inc.*,
646 F.3d 113 (2d Cir. 2011)...............................................................................16

*Kolel Beth Yechiel Michil of Tartakov, Inc. v. YLL Irrevocable Trust*,
799 F.3d 99 (2d Cir. 2013) ................................................................................14

*Metallgesellschaft A.G. v. M/V Capitan Constante*,
790 F.2d 280 (2d Cir. 1986)..........................................................................34, 35

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ..................................................................17

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ......................................................................17

*Ometto v. ASA Bioenergy Holding A.G.*,
  2013 U.S. Dist. LEXIS 7402 (S.D.N.Y. 2013) at *16-*18, *aff'd o.b.*
  *Ometto v. ASA Bioenergy Holding A.G.*, 549 Fed. Appx. 41 (2d Cir.
  2014)..........................................................................................31

*Otal Invs. Ltd. v. M/V Clary*,
  673 F.3d 108 (2d Cir. 2012) ..................................................... 23fn. 8

*Oxford Health Plans LLC v. Sutter*,
  133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013)..............................18

*Paulsen ex rel. NLRB v. Remington Lodging & Hospitality, LLC*,
  773 F.3d 462 (2d Cir. 2014) ..................................................... 23fn. 8

*Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*,
  157 F.3d 174 (2d Cir. 1998)......................................................34

*Scandinavian Reins. Co. v. Saint Paul Fire & Marine Ins. Co.*,
  668 F.3d 60 (2d Cir. 2012) ...................................................14, 16

*Schneider v. Kingdom of Thailand*,
  688 F.3d 68 (2d Cir. 2012) .......................................................24

*Schwartz v. Merrill Lynch & Co.*,
  665 F.3d 444 (2d Cir. 2011) .....................................................28

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
  592 F.3d 329 (2d Cir. 2010)......................................................27

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (1960) ..................................................................18

-iv-

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II L.P.*, 717 F.3d 322 (2d Cir. 2013) ............................................................ 15

*Woods v. Dunlop Tire Corp.*,
972 F.2d 36 (2d Cir. 1992) ........................................................................ 29

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,*
126 F.3d 15 (2d Cir. 1997) ................................................................. 16, 27

*Zeiler v. Deitsch*,
500 F.3d 157 (2d Cir. 2007) ............................................................... 34, 35

**FEDERAL STATUTES**

9 U.S.C. § 10(a)(4) ......................................................... 11, 16, 17, 34

9 U.S.C. § 201 ................................................................... 14, 15, 16, 18

9 U.S.C. § 207 ........................................................................................ 15

**FOREIGN STATUTES**

Antigua Barbuda Sales Tax Act §§ 39, 41(1) ................................... 11, 19

**FOREIGN CASES**

*Bremer Handelsgesellschaft v. C. Mackprang Jr.*, 1 Lloyd's Law Report 221 (Court of Appeal 1979) ......................................................................... 33

*Mavis Henry v. Tyrone Walker*, Claim No. ANUHCV 2000/2007 Eastern Caribbean Supreme Court (2009) ............................................................. 29

*Motor Oil Hella (Corinth) Refineries S.A. v. Shipping Corp. of India ("The Kanchenjunga")*, 1 Lloyd's Rep. 391 (House of Lords 1990) ................ 33

## **PRELIMINARY STATEMENT**

This appeal arises from an international commercial arbitration. Appellant Leeward Construction Co. Ltd ("Leeward") contracted with Respondent American University of Antigua College of Medicine ("AUA") to build the main building on AUA's Antigua campus. Leeward surcharged AUA 13% of each invoice purportedly to cover Leeward's potential liability for Antigua Barbuda Sales Tax ("ABST") on goods and services it provided under the contract. Because AUA's campus is in the Antigua and Barbuda Free Trade and Processing Zone, however, no ABST was due in connection with AUA's project. Nor did Leeward ever treat the money it collected from AUA as ABST. Leeward never paid over any of the sums it collected from AUA purportedly as ABST to the Government of Antigua and Barbuda; nor did it file with the Government's Inland Revenue Department any of the monthly tax returns that the ABST Act required. Instead, Leeward simply pocketed the $1,338,723 that AUA had paid on account of potential ABST liability, closed its doors after completing the project, and went out of business. Accepting AUA's claims that the payments amounted to an overpayment of the contract price and Leeward's retention of them to an ill-gotten windfall, the Tribunal awarded restitution of these sums to AUA. ("Second Award").

Leeward has now appealed from the District Court's decision confirming the Second Award on four grounds. Leeward has failed to articulate any reason under

1

the stringent standards of the New York Convention and the judicially created "manifest disregard" standard to overturn the Second Award, which is supported by a rational view of both the evidence and the law.

First, Leeward argues that the Tribunal improperly engaged in tax enforcement, and therefore exceeded the scope of its authority, when it ruled that AUA was entitled to restitution of  sums that Leeward wrongfully invoiced, collected, and retained as purported tax payments for work done under the Agreement.  But as AUA argued, and the Tribunal found, AUA was simply seeking restitution of the sums that Leeward improperly over-invoiced.  As the Deputy Commissioner of the Inland Revenue Department of the government of Antigua and Barbuda affirmed before the Tribunal, and as contemporaneous correspondence from the Department that AUA submitted to the Tribunal confirms, the sums that AUA paid to Leeward in satisfaction of its invoicing for ABST were "not taxes."  They were nothing but  overpayments of the contract price, such that AUA's remedy was not to obtain a refund of nonexistent taxes from the Government but rather to obtain recoupment directly from Leeward.  In ordering Leeward to return the sums it wrongfully invoiced AUA as ABST, the Tribunal correctly rejected Leeward's contention that Leeward was attempting to enforce the tax laws.

Second, Leeward argues that the Tribunal lacked authority to award AUA damages for unjust enrichment because unjust enrichment is an equitable remedy and AUA had omitted to plead it in the last of several amended answers that it had filed. Leeward is wrong. As the Tribunal found, applicable law provides that equitable claims are presumptively arbitrable under broadly worded arbitration clauses, such as the one here, and, moreover, that unjust enrichment was only one of several valid grounds AUA advanced for restitution. In any case Leeward had notice and both parties fully litigated the issue of unjust enrichment before the Tribunal.

Third, Leeward argues that the Tribunal "manifestly disregarded" the law of *res judicata*, waiver, and modification when, after extensive briefing and oral argument, the Tribunal rejected those defenses on the merits. Leeward's argument fails because there is no basis for concluding that the Tribunal "intentionally defied the law" or committed any "egregious impropriety." Instead, the facts and evidence presented to the Tribunal plainly established that Leeward's *res judicata*, waiver, and modification arguments were "unavailing," as the Tribunal concluded.

Lastly, Leeward argues that the Second Award is not final. However, the Second Award finally and conclusively disposed of the claims now before the Court. The Second Award is "final" with respect to those claims and should be confirmed.

## STATEMENT OF JURISDICTION

AUA concurs in Appellant Leeward's statement of jurisdiction.

## COUNTER STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether the arbitrators acted within the scope of their authority by ordering restitution from Leeward of money paid by AUA to reimburse Leeward for purported Antigua and Barbuda Sales Tax that Leeward did not pay?

2.      Whether the standard of manifest disregard is applicable to this foreign arbitration award under the New York Convention?

3.      Whether the arbitrators manifestly disregarded the law of Antigua on the issues of *res judicata* and waiver?

4.      Whether the Partial Final Award directing restitution to AUA of money paid by AUA to reimburse Leeward for purported Antigua and Barbuda Sales Tax that Leeward did not pay is enforceable as a final resolution of AUA's claim for restitution?

## STATEMENT OF THE CASE

This is an action to enforce an arbitration award.  AUA's Petition to enforce was filed on October 21, 2014 (A 035), and Leeward cross-moved to deny enforcement, vacate, and/or modify on December 11, 2014.  (A 249).  On May 1, 2015, Judge Denise L. Cote issued a memorandum enforcing the arbitration award and denying Leeward's cross-motion.  (A 015) *American University of Antigua –*

4

*College of Medicine v. Leeward Construction Co., Ltd.*, 2015 U.S. Dist. LEXIS 57579 (S.D.N.Y May 1, 2015).

### A.   <u>Background</u>

This case arises from the construction by Leeward of the main building on AUA's campus in Antigua.  Leeward and AUA are both Antigua corporations.[1] AUA was chartered by the Government of Antigua in 2004 to operate a medical school.  (A 190-91).

On September 25, 2008 AUA and Leeward entered a contract ("the Agreement") (A 041-092) that engaged Leeward to construct the main building on AUA's Antigua campus ("the Project").  The Agreement contains the following arbitration clause:

> § 4.6.1 *Any claim arising out of or related to the Contract* . . . shall . . . be subject to arbitration.
>
> § 4.6.2 Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract, and with the American Arbitration Association, and a copy shall be filed with the Architect.  Location of any arbitration shall be Antigua.

---

[1]   Since the events in question, Leeward has ceased operations and gone out of business.  *See* Affidavit of Leonard A. Sclafani, Leeward Construction Co., Ltd. v. American University of Antigua – College of Medicine, Docket No. 1:12-CV-06280-LAK/GWG, Docket Entry # 56, ¶ 6, appeal pending as Second Circuit Docket No. 13-1708.

(A 073) (emphasis added).

The Commonwealth of Antigua and Barbuda levies the Antigua and Barbuda Sales Tax ("ABST") against suppliers of goods and services, in this case Leeward, on certain goods and services. The Agreement provides that Leeward is to pay any ABST on work it performed. (A 066, 165). It is undisputed that Leeward surcharged AUA 13% on each invoice as purported reimbursement for ABST, and that AUA paid approximately $1,338,723 to Leeward on account of these surcharges. [2] It is undisputed that under the ABST Act, it was Leeward's responsibility, as supplier, to determine whether ABST was due, to file returns, and to pay any ABST that was due on the Project. (A 423) It is undisputed that, although Leeward invoiced and collected these sums purportedly as ABST, it never treated the money it collected as ABST. Leeward never filed an ABST tax return or paid ABST to the Government. It simply pocketed the money for its own use and enjoyment. (A 176-78).

In the Second Arbitration, AUA submitted the Affirmation of Antigua's Deputy Commissioner of Inland Revenue, in which he affirmed that no ABST was ever due or owing from Leeward on the Project because the Project was constructed in Antigua and Barbuda's Free Trade and Processing Zone, where

---

[2]    EC $3,614,522. (A 179). Both Awards were made in Eastern Caribbean dollars. Sums in the Brief are stated in U.S. dollars at the exchange rate of 2.7 Eastern Caribbean dollars per U.S. dollar.

goods and services are not taxable. (AUA SA 1). He also affirmed that he had so informed AUA by letter in August 2007 when he was Director of ABST Implementation in the Department. (*Id.*).

### B.  **Procedural History**

Two separate arbitration proceedings, involving entirely separate claims and defenses, arose from the Project. Enforcement of the First Award is the subject of *Leeward Construction Co., Ltd. v. American University of Antigua*, Docket No. 13-1708. Enforcement of the Second Award is the subject of this appeal. On Leeward's motion, the Court has ordered the two appeals to be argued in tandem. Docket No. 15-1595, docket entry # 39.

## 1.    **The First Arbitration**

After completion of the Project, on February 3, 2011, Leeward initiated an arbitration proceeding against AUA before the American Arbitration Association International Center for Dispute Resolution ("AAA") under the Construction Arbitration Rules.  (A 252).  Leeward alleged, *inter alia*, that AUA breached the Agreement by withholding money owed Leeward for elements of the Project that AUA removed from the construction plans; that it was due a "mobilization" fee; and that it was owed penalties for delays occasioned by AUA.  Leeward sought $2,518,931.97 in damages.  AUA counterclaimed for liquidated delay damages.

On June 22, 2012, the arbitrators issued an award (A 321), modified on August 8, 2012 (the "First Award") (A 354). The arbitrators concluded that the Agreement was a fixed price contract under which Leeward was entitled to compensation for work performed.  (A 360).  They concluded that AUA had breached the Agreement by deleting certain work from the construction plans, and that Leeward was entitled to a total award of $976,421.37 plus 7%  interest.  (A 384).[3]

---

[3]    As part of the First Award, the Tribunal awarded Leeward EC $232,670.13 as "damages under the bad faith doctrine."  (A 365).  AUA objected to this aspect of the First Award on the ground that the Tribunal had invoked the "bad faith doctrine" on its own motion, without notice, thereby depriving AUA of the opportunity to demonstrate that there is no such doctrine under Antiguan law.  That issue is before the Court in the First Appeal.  Docket No. 13-1708, docket entry # ("AUA Brief") at 1, 13-16.

Leeward petitioned to enforce the First Award in the United States District Court for the Southern District of New York, and AUA cross-moved to modify it on the grounds stated in its post-hearing objections. (A 254). On March 26, 2013, the Hon. Judge Lewis A. Kaplan granted Leeward's petition. (A 388). AUA appealed, and its appeal of the First Award is currently pending. *Leeward Constr. Co., Ltd. v. American University of Antigua – College of Medicine*, Docket No. 13-1708. ("First Appeal") On motion by Leeward, the Court ordered the First Appeal and the instant appeal to be heard in tandem. Docket Entry # 39.

### 2. The Second Arbitration

The Second Arbitration arose from an incident during the course of the First Arbitration. In the course of preparing AUA's case, counsel for AUA had discovered and, in good faith, notified Leeward of what counsel erroneously believed was a $30,743.20 mistabulation in Leeward's favor in its invoicing of ABST. Leeward submitted a claim for this sum, to which AUA objected. Counsel brought this apparent mistabulation to Leeward's attention although Leeward's invoicing and collection of sums on account of ABST were not relevant to the issues in the proceeding. Nevertheless, at the end of the arbitration, Leeward asked the Tribunal to include that sum as damages. AUA objected, and the Tribunal refused to award that sum, finding that any error in Leeward's invoicing of ABST

9

did not involve any of the claims or issues raised in the First Arbitration and was

outside the scope of the proceeding.  (A 331-32).

On February 7, 2013, six months after the First Award, Leeward

commenced the Second Arbitration against AUA, asserting a single claim against

AUA seeking to recover the purportedly "mis-tabulated" $30,762.80 in ABST

payment.  ("Leeward's ABST Claim").  (A 095).  By then, AUA had realized that

the "mistabulation" was not in Leeward's favor and that, not only was AUA not

liable to Leeward for Leeward's mistake in invoicing ABST, but that AUA was

instead entitled to all funds that Leeward had wrongfully invoiced and collected as

ABST.   Accordingly, AUA asserted several counterclaims ("AUA ABST

Counterclaims") for refund of all amounts it had previously paid to Leeward as

purported ABST, approximately $1,338,723.  (A 132-33).  AUA's Amended

Counterclaim asserted  that AUA had no liability for ABST, that its payment to

Leeward was an overpayment of the contract price and/or the result of mutual

mistake, that under the Agreement Leeward was responsible to pay any ABST due,

and that the payments unjustly enriched Leeward because Leeward had not paid

any ABST in connection with the project.  (A 155-56).  The Amended

Counterclaim also included a counterclaim for construction defects in Leeward's work on the project. (*Id.*).[4]

The parties submitted their respective positions to the Tribunal on motions for summary judgment. Leeward asserted an array of defenses to the AUA ABST Counterclaims, including that they were barred by *res judicata*, that they constituted tax enforcement that only the Government had the right to pursue and that AUA lacked standing to raise, that AUA had waived its claim by paying Leeward's invoices without protest, and that the ABST Counterclaims were outside the scope of the Arbitration Clause.

On February 6, 2014, the Tribunal ruled that the AUA's ABST Counterclaims were within the scope of the Arbitration Clause but that it could not decide the issues without a further hearing. (A 167). It deferred ruling on either Leeward's *res judicata* defense or the merits of the ABST Claim. It deferred ruling on either Leeward's *res judicata* defense or the merits of the ABST Claims until oral argument. (A 166-68). Oral argument was held on April 28, 2014, in Miami, Florida. (A 173).[5]

---

[4]     The Tribunal subsequently permitted AUA to amend its answer to include construction defect claims not included in the initial answer and first amended answer. In adding the construction defect claims, AUA did not include an unjust enrichment claim in its final amended answer.

[5]     While the argument was held in Miami, Florida by agreement for the convenience of the parties, the seat of the Second Arbitration continued to be in Antigua, as required by the Agreement. (A 173)

On September 18, 2014, the Tribunal issued its Partial Final Award denying Leeward's ABST Claim on the merits, rejecting Leeward's defenses to AUA's ABST Counterclaims, and granting AUA's ABST Counterclaim in the amount of $1,344,588.25 (the "Second Award"). In a 2-1 decision with a written dissent, the Second Award fully and finally resolved the respective parties' ABST Claims and defenses, awarding AUA restitution of the $1,344,588 that AUA had paid Leeward on account of purported ABST. The Tribunal majority found the following undisputed facts: (i) AUA paid 13% of otherwise invoiced amounts on account of purported ABST; (ii) Leeward never filed ABST tax returns or paid ABST; and (iii) the Government of Antigua was holding no funds from which AUA could seek a refund. (A 172). It concluded:

> Leeward's collection of ABST – or sums due to be paid as ABST – from AUA places Leeward in the position of the holder, but not the owner, of the funds whit it labeled as ABST. The record does not contain credible indication of any title or ownership in favor of Leeward entitling it to keep or retain these monies. Insofar as Leeward failed to pay over to the government the sums that it invoiced and collected from AUA as ABST related to the project, Leeward would be unjustly enriched if it were permitted to retain these monies.

(A 177-78).[6]

---

[6]    Under the ABST Act, Leeward was a "taxable person" (A 476), with the duty to file monthly returns and pay taxes on filing. ABST Act §§ 39, 41(1) (A 518-19). As the dissenting arbitrator noted, Leeward admitted that it was the party liable to the Government to file ABST returns and pay any ABST due (A 423).

On October 16, 2014, AUA petitioned to enforce the Second Award in the United States District Court for the Southern District of New York. (A 035). On December 11, 2014, Leeward filed its opposition and cross-moved to deny enforcement of, vacate, and/or modify the Second Award. (A 249). Leeward opposed confirmation of and sought to vacate the Second Award on three grounds: (i) that the Tribunal exceeded its authority, in violation of Article (V)(1)(c) of the New York Convention and 9 U.S.C. § 10(a)(4); (ii) that the award is "non-final and ambiguous" and does not satisfy the condition of finality under 9 U.S.C. § 10(a)(4); and (iii) that the Tribunal acted with "manifest disregard for the law."

On May 1, 2015, Judge Denise L. Cote issued a memorandum opinion confirming the Second Award and denying Leeward's cross-motion, finding that "[n]one of [Leeward's] arguments has merit". (A 024). Judge Cote rejected Leeward's argument that the Tribunal exceeded its authority, finding that AUA's unjust enrichment claim was properly before the Tribunal and that the Tribunal offered an adequate explanation for awarding AUA damages for the money it overpaid Leeward under the Agreement. (A 025-28). Judge Cote also determined that the Second Award fully and finally resolved the respective parties' ABST Claims and defenses, and therefore, was ripe for confirmation. (A 029-30). Lastly, Judge Cote explained that Leeward's disagreement with the Tribunal's

---

Nevertheless, the dissent asserted that AUA had somehow "paid the taxes" by making surcharge payments to Leeward. (A 422).

13

decision on *res judicata*, waiver, and modification does not mean that Leeward gets to re-litigate those issues and does not transform the Tribunal's arguable conclusions of law into "manifest disregard." (A 030-33).

## SUMMARY OF ARGUMENT

Leeward takes issue with several aspects of the Tribunal's decision, but fails to meaningfully engage with the governing standard and falls short of carrying its heavy burden to avoid confirmation of an arbitration award. The law is clear that Leeward cannot re-litigate the Tribunal's decision just because it disagrees with certain aspects of that decision. The presence of a dissenting opinion in the Second Arbitration is of no moment to the standard governing this confirmation proceeding. Moreover, although not directly relevant given the standard of review, the Tribunal got it right, both on the law and the equities. It is critically important to remember what Leeward admits: it collected and retained money from AUA under the Agreement purportedly as ABST, but never treated it as such, filing no tax returns and paying no taxes. All of Leeward's argument boil down to hyper-technical, and flawed, reasons for why it should be able to retain this windfall. As discussed below, Leeward's attempts to avoid confirmation of the Second Award fall woefully short, both on the law and the equities.

First, the Tribunal was acting well within the scope of its authority when it fashioned a remedy to permit AUA to recover the money that Leeward improperly

14

overcharged under the Agreement.  Preventing Leeward from keeping money it

improperly retained under the Agreement is not engaging in tax enforcement.

Second, the language of the Agreement's arbitration provision is broad—

"[a]ny Claim **arising out of or related to** the Contract"—and leaves no doubt that

the parties intended for all disputes deriving from or relating to the parties'

relationship as owner and contractor on the construction project to be submitted to

arbitration.  AUA's unjust enrichment claim—based on the theory that Leeward

wrongfully invoiced and retained purported tax payments for work done under the

contract— "arises out of or relates to the Contract," and therefore, was within the

Tribunal's purview.

Third, not only is there no basis for concluding that the Tribunal

"intentionally defied the law" or committed any "egregious impropriety," but the

facts and evidence presented to the Tribunal plainly established that Leeward's *res

judicata*, waiver, and modification arguments were "unconvincing," as the

Tribunal concluded.  Thus, the Tribunal did not manifestly disregard the law.

Finally, as the Second Award finally and conclusively disposed of all of the

claims now before this Court, the Second Award is final and should be confirmed.

## **ARGUMENT**

## I.   **THE STANDARD OF REVIEW**

On appeal of an arbitration award, this Court reviews questions of law *de novo*.  *Kolel Beth Yechiel Michil of Tartakov, Inc. v. YLL Irrevocable Trust*, 799 F.3d 99, 103 (2d Cir. 2013); *Scandinavian Reins. Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012).  Findings of fact, however, are reviewed for clear error.  *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret VeSanayi A.S.*, 492 F.3d 132 (2d Cir. 2007).

Even when conducting *de novo* review, the Court's review is still limited in the same manner the District Court's was during the confirmation proceeding. Here, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 ("New York Convention"), as implemented by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201 *et seq.* is involved.

The New York Convention applies "to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought" and "arbitral awards not considered as domestic awards in the State where their recognition and

enforcement are sought." New York Convention, art. I(1).  Antigua and Barbuda is

a signatory to the New York Convention.[7]

Confirming an arbitration award "ordinarily is a summary proceeding that

merely makes what is already a final arbitration award a judgment of the court."

*Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 132 (2d Cir. 2015) (citation

omitted).  The FAA provides that a court confronted with a motion to confirm an

arbitral award governed by the New York Convention "shall confirm the award

unless it finds one of the grounds for refusal or deferral of recognition or

enforcement of the award specified in the said Convention."  9 U.S.C. § 207.

"Given the strong public policy in favor of international arbitration, the party

seeking to avoid summary confirmance of an arbitral award has the heavy burden

of proving that one of the [New York Convention's] defenses applies."  *VRG*

*Linhas Aereas S.A. v. Matlin Patterson Global Opportunities Partners II L.P.*, 717

F.3d 322, 325 (2d Cir. 2013) (citation omitted).  Here, Leeward invokes Article

V(1)(b) of the New York Convention, which provides only a narrow basis to refuse

enforcement of an arbitration award that violates the forum state's standards of due

process.  Leeward Brief at 14.

---

[7]     See List of Contracting States to the New York Convention, available at:
http://www.newyorkconvention.org/list+of+contracting+states, last accessed on
September 21, 2015.

Where an award "was entered in the United States, however, the domestic provisions of the FAA also apply." *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012). Among the FAA's grounds for vacatur is that the "arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). In addition, courts have "recognized a judicially-created ground, namely that an arbitral decision may be vacated when an arbitrator has exhibited a manifest disregard of law." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 (2d Cir. 2011) (citation omitted). This ground has been "consistently accorded the narrowest of readings." *Id.* at 122 (citation omitted).

Without specifically holding that the "manifest disregard" standard applied, the District Court held that there had been no manifest disregard. (A 023-24). Although the final oral argument was conducted in Miami for the convenience of the parties, the parties agreed and the Tribunal ruled that "the seat of arbitration would remain in Saint John, Antigua, Antigua and Barbuda, as per the Parties' arbitration agreement." (A 173). Accordingly, the "manifest disregard" standard should not apply to this arbitration proceeding between two foreign entities held abroad. *See Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,* 126 F.3d

15, 20-23 (2d Cir. 1997) (New York Convention grounds exclusive for awards rendered outside the United States).

Leeward opposes confirmation of and seeks to vacate the Second Arbitration Award on four grounds. First, it argues that the Tribunal exceeded its authority, in violation of 9 U.S.C. § 10(a)(4) and Article V(1)(b) of the New York Convention. Second, it argues that AUA's unjust enrichment claim was not properly before the Tribunal. Third, it argues that the Tribunal acted with "manifest disregard for the law." Fourth, it argues that the award is "non-final and ambiguous" and thus does not satisfy the condition of finality under 9 U.S.C. § 10(a)(4). As discussed below, none of these arguments has merit.

## II. ALL OF THE ISSUES THAT THE ARBITRATORS DECIDED WERE WITHIN THEIR AUTHORITY AND THE SCOPE OF THE PARTIES' BROAD ARBITRATION CLAUSE

To determine whether the Tribunal exceeded its authority, the Court must first determine what the parties agreed to arbitrate. Under the Arbitration Clause at issue here, there is no dispute that the parties expressly agreed to arbitrate "[*a]ny Claim arising out of or related* to the Contract," subject to certain exceptions not relevant here. (A 073) (emphasis added). There is a well-established and strong federal policy in favor of resolving disputes through arbitration, that "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). "[A]s a matter of federal

law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . ."  *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  A court may not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute."  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

Under the FAA, a party seeking to overturn an award because the arbitrator has exceeded her powers "bears a heavy burden," *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068, 186 L. Ed. 2d 113 (2013), and "vacatur under the excess-of-powers standard is appropriate only in the narrowest of circumstances."  *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 754 F.3d 109, 113 (2d Cir. 2014) (citation omitted).  "It is not enough to show that the arbitrator committed an error -- or even a serious error." *Id.* (citing *Sutter*, 133 S. Ct. at 2068).  The "sole question . . . is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong."  *Sutter*, 133 S. Ct. at 2068.

Leeward argues that the Tribunal exceeded its powers in two ways: (1) that the Tribunal improperly enforced tax laws, and (2) that the Tribunal lacked power to decide AUA's unjust enrichment claim.

Although addressed in separate sections of Leeward's brief, and framed under slightly different legal theories, both of Leeward's arguments addressing the Tribunal's alleged lack of authority share the same fundamentally flawed logical underpinnings. The common thread running through both arguments is the mistaken belief that the Tribunal was powerless to prevent Leeward from retaining the money it improperly overcharged AUA under the Agreement. Section II. A. below addresses Leeward's specious argument that because Leeward improperly invoiced certain payments as ABST, AUA's claims to recoup those funds that Leeward improperly overcharged under the Agreement are transformed into claims for the refund of "taxes" that were never owed and which Leeward never paid. According to Leeward, by permitting AUA to recoup sums paid to Leeward to which Leeward was not entitled under the Agreement, the Tribunal "improperly engaged in tax enforcement." Section II. B. below addresses Leeward's related, and equally unsound, argument that because unjust enrichment is based on the common law of Antigua and Barbuda, as opposed to the contract itself, it somehow follows that such a claim cannot "arise out of or relate to" the contract between the parties.

21

### A. AUA Was Not Seeking To Enforce The Tax Laws Of Antigua And Barbuda When It Sought The Return Of Money It Paid To Leeward Under The Contract, And Which Leeward Has Retained

Several essential points are not in dispute. First, under the ABST Act §§ 39 and 41(1), Leeward, as the supplier of goods and services to AUA, was the "taxable person" responsible to file monthly returns and pay the Government any ABST actually due. (A 476 (defining "taxable person," 518-19)). Leeward conceded that it was the taxable person. (A 423 ¶ 11). Second, the Agreement provides, in General Conditions § 3.6.1, that all sales taxes are Leeward's responsibility. (A 066). Third, Leeward conceded at oral argument that it was the entity responsible to file ABST returns and pay any tax due. (A 423). Finally, while Leeward collected $1,338,723 from AUA as a 13% ABST surcharge, it never filed tax returns or paid ABST. Instead, it pocketed the money. (A 177-78).

Leeward first argues that in awarding damages for the money it collected from AUA on account of potential ABST, the Tribunal exceeded its authority by engaging in "tax law enforcement – a right only granted to the Antigua and Barbuda tax authorities – not the Tribunal or the AUA." But Leeward acknowledges that the overpayments actually were not ABST and that it never remitted the monies to the Government as ABST. (A 176, 423). Yet Leeward asserts that AUA's only remedy is to seek a "refund of the ABST from the Antiguan government pursuant to the ABST Act." Leeward Brief at 16. Leeward

22

does not explain why the Government would "refund" money it never received in the first place or why its labeling of payments from AUA as being for ABST is conclusive.

On the contrary, as the Tribunal ruled, "Leeward's collection of ABST – *or funds due to be paid as ABST* – from AUA places Leeward in the position of the holder, but not the owner, of funds *which it labeled as ABST*. (A 177) (emphasis added). The District Court agreed. "The money may have been earmarked for ABST payments, *but that does not make it an ABST payment*." (A 028)(emphasis added).

On its summary judgment motion before the Tribunal, Leeward advanced the same argument under the rubric of AUA's "lack of standing" to enforce tax laws. (A 167 ¶ 24). AUA countered, with testimony from the Government of Antigua and Barbuda, that since no ABST was in fact due, and as Leeward never treated the sums it collected as taxes, Leeward was obliged to refund to AUA the sums it had collected on account of ABST that was not in fact due and never paid over. (A 167 ¶ 25, AUA SA 1-2, 5-6). The Tribunal found it immaterial whether ABST was in fact due. (A 177 ¶ 14). Instead, it concluded that whether or not tax was due, Leeward, the putative taxpayer, was unjustly enriched by retaining money that it obtained from AUA under the guise of ABST but never paid over. (A 177-78, ¶¶ 16-17). Because Leeward never paid any tax, "there are no ABST monies in

23

the possession of the government from which AUA can seek a refund.  (A 177 ¶ 16).

Despite Leeward's repeated efforts to suggest otherwise, this is not a suit to enforce a tax judgment or obtain a tax refund.  Nor is AUA seeking to collect taxes from Leeward on behalf of the Antiguan government.  Rather, AUA is seeking the return of money it paid to Leeward, for payment of ABST by Leeward if that was required.  Payment of ABST was never required, and Leeward has wrongfully retained the money.

Leeward provides neither authority nor good reason for its argument that disputes between parties that involve taxes or the tax laws on Antigua cannot by definition "arise out of or relate to" the Agreement.  Moreover, Leeward ignores the fact that it commenced the Second Arbitration by asserting its own claim for a payments from AUA on account of ABST.  Most importantly, the dispute does not involve the payment of taxes at all, but rather the retention of money by the putative taxpayer as purported reimbursement for taxes that it was obliged to pay both by Antigua law and the terms of the Agreement.

Simply put, AUA's claims were to recoup sums paid to Leeward to which Leeward was not entitled under the Agreement.  Such claims clearly arise out of or relate to the Agreement, and therefore, were within the scope of the Arbitration Clause and the Tribunal's authority.  Accordingly, the Tribunal was more than

24

justified in deciding that AUA was entitled to recoup from Leeward what Leeward had overcharged AUA under the Agreement.

**B.     AUA's Unjust Enrichment Claim Was Properly Before the Tribunal**

Leeward argues that the Tribunal lacked authority to determine that Leeward had been unjustly enriched by retaining sums it improperly collected from AUA as purported taxes for work done under the Agreement.  There is no meaningful dispute regarding whether Leeward was in fact unjustly enriched when it collected sums from AUA it invoiced as taxes.  No such taxes were ever due.  Leeward neither remitted the sums it collected as taxes to the Government nor accounted for receipt of the sums.  It simply pocketed the money, closed its offices, and went out of business.

Undeterred, Leeward argues that because unjust enrichment is based on the common law of Antigua and Barbuda as opposed to the Agreement itself, and that unjust enrichment is an equitable doctrine, it somehow follows that such a claim cannot "arise out of or relate to" the contract between the parties.[8]  In other words,

---

[8]     Leeward's argument that a claim for unjust enrichment is precluded under Antigua law by the existence of the written Agreement (Leeward Br. at 31-32) was not raised in the District Court, where Leeward argued only that unjust enrichment is an equitable doctrine that is outside the scope of the Arbitration Clause.  (A 026-28).  Because this argument was not raised below, it should not be considered.  *See Paulsen ex rel. NLRB v. Remington Lodging & Hospitality, LLC,* 773 F.3d 462, 467 (2d Cir. 2014) (non-jurisdictional arguments not raised below "forfeited");

25

Leeward maintains that the Tribunal was powerless to prevent Leeward from retaining the money it improperly overcharged under the Agreement because such a claim did not arise under or relate to the Agreement.

To begin with, AUA's arguments before the Tribunal for recovery of the sums it paid to Leeward as ABST were not limited to unjust enrichment. AUA also argued mutual mistake as to whether ABST was due, breach of contract, and fraud. (A 155-56). Under all of these legal theories, AUA asserted claims for restitution of the sums paid to Leeward under the Agreement on account of Leeward's possible liability for ABST. The Tribunal awarded AUA that restitution, concluding that "AUA has submitted alternative avenues supporting its claim for the same amounts claimed as unjust enrichment, both under contract and under law," and "all alternative avenues would lead to the same result." (A 179 ¶ 20). The Tribunal "therefore considers it unnecessary to dwell in detail in [sic] each such construction." (*Id*.). Its conclusion that AUA's restitution claim was encompassed by the Arbitration Provisions is accorded great deference. *See Schneider v. Kingdom of Thailand*, 688 F.3d 68, 73 (2d Cir. 2012).

Moreover, the language of the Arbitration Agreement is broad—"[a]ny Claim arising out of or related to the Contract"—and leaves no doubt that the parties intended for all disputes deriving from or relating to the parties'

*Otal Invs. Ltd. v. M/V Clary*, 673 F.3d 108, 112 (2d Cir. 2012) (court "declines to consider" argument not raised below).

relationship as owner and contractor on the construction project to be submitted to arbitration. Under broad arbitration clauses, claims of unjust enrichment predicated on parties' obligations under a contract are presumptively arbitrable. *See, e.g.*, *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 167, 183 (2d Cir. 2004) (holding common-law claim of unjust enrichment was encompassed by clause providing for arbitration of "[a]ny and all differences and disputes of whatsoever nature arising out of" the agreement); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 856 (2d Cir. 1987) (holding that unjust enrichment claim "predicated on the defendants' contractual duty to bill . . . accurately . . . arises under" contract). A clause, like the Agreement's arbitration provision, that "submit[s] to arbitration any claim or controversy arising out of or relating to the agreement' is the paradigm of a broad clause," *Collins & Aikman Prods. Co. v. Building Sys.*, 58 F.3d 16, 20 (2d Cir. 1995). It is hard to imagine a claim that more closely relates to the Agreement than a claim alleging that Leeward wrongfully invoiced and retained for its own use purported tax reimbursement for work done under the Agreement while not paying any tax.

Leeward also invokes Article V(1)(b) of the New York Convention to argue that the Tribunal "violated Leeward's due process" when it decided AUA's unjust enrichment claim because AUA "waived" that claim by dropping it from its final pleading. Article V(2)(b) permits vacatur if "[t]he party against whom the award is

27

invoked . . . was . . . unable to present his case," New York Convention, art. V(2)(b). This provision "essentially sanctions the application of the forum state's standards of due process," and accordingly "due process rights are entitled to full force under the Convention as defenses to enforcement." *Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 145 (2d Cir. 1992) (citation omitted).

Leeward fully litigated AUA's unjust enrichment claim in the Second Arbitration without ever suggesting that it had somehow been waived. (A 168-69, 405-406). The parties engaged in motion practice and oral argument on the merits of AUA's unjust enrichment claim long after the pleadings phase had concluded. Leeward had a full and fair opportunity to litigate AUA's unjust enrichment claim and availed itself of that opportunity. After the parties submitted lengthy written motion papers and participated in oral argument addressing AUA's unjust enrichment claim, the Tribunal decided the unjust enrichment claim in AUA's favor. (A 172-80). Leeward is entitled to disagree with that decision, but it is not entitled to re-litigate the propriety of AUA's unjust enrichment claim after having a full and fair opportunity to litigate this exact issue before the Tribunal. Although not directly relevant to this Court's inquiry, it is also relevant to note that Leeward would undeniably be unjustly enriched if permitted to retain the money it charged AUA as ABST under the Agreement when it is undisputed that no such taxes were ever owed or paid.

28

Under these circumstances, Leeward has failed to establish that it was denied "an opportunity to be heard at a meaningful time and in a meaningful manner." *Iran Aircraft*, 980 F.2d at 146 (citation omitted).

## III. THE AWARD WAS FULLY JUSTIFIED AND DOES NOT CONSTITUTE A "MANIFEST DISREGARD" OF THE LAW

Next, Leeward argues that the Tribunal acted with a "manifest disregard for the law" because it "improperly refused to apply" the doctrines of *res judicata*, waiver, and modification.[9]  For the reasons stated at page 16, *supra*, the Second Award may not be vacated under the "manifest disregard" doctrine because it is a foreign award, with the Tribunal's seat in Antigua, and "manifest disregard is not one of the grounds for vacating a foreign award under the New York Convention. *See Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,* 126 F.3d 15, 20-23 (2d Cir. 1997) (New York Convention grounds exclusive for awards rendered outside the United States).  Even if it does apply, however, Leeward cannot carry its high burden and is not entitled to re-litigate aspects of the Tribunal's decision just because it disagrees with portions of the Second Award.

"[A]wards are vacated on grounds of manifest disregard only in those exceedingly rare instances where some egregious impropriety on the part of the

---

[9]  In the District Court, Leeward argued that the Tribunal "completely ignored" these preclusion doctrines.  In a tacit admission that the Tribunal did not ignore these doctrines, but rather, rejected Leeward's arguments on the merits, Leeward now asserts that the Tribunal "improperly refused to apply" these doctrines.

arbitrator is apparent." *T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (citation omitted). The disregard must be "more than error or misunderstanding with respect to the law" or an "arguable difference regarding the meaning or applicability of laws urged upon an arbitrator," and "[t]he award should be enforced . . . if there is a barely colorable justification for the outcome reached." *Id.* (citation omitted). "[T]o apply the manifest disregard standard, the court must consider, first, whether the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable, and, second, whether the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it." *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 452 (2d Cir. 2011) (citation omitted).

Here, not only is there no basis for concluding that the Tribunal "intentionally defied the law" or committed any "egregious impropriety," but the facts and evidence presented to the Tribunal plainly established that Leeward's *res judicata*, waiver, and modification arguments were "unconvincing," as the arbitrators concluded.

### A.    Res Judicata Does Not Bar AUA's Claim Because Issues Relating To ABST Were Outside The Scope Of The First Arbitration

As to Leeward's *res judicata* argument, as the Tribunal noted, the preclusive effect of a prior arbitration on a subsequent arbitration is a matter for the arbitrator to decide." (A 403) (citing *Employers Ins. Co. of Wausau et al., v. One Beacon*

30

*American Ins. Co. et al.*, Case No. 13-1913 (1st Cir. Feb. 26, 2014)).  In the

Second Arbitration, Leeward argued that AUA was barred by *res judicata* from

opposing Leeward's ABST Claim and advancing its own ABST Counterclaim

because AUA had failed to present those claims and defenses in the First

Arbitration.  However, as AUA argued in the Second Arbitration, Leeward's

proposed *res judicata* standard – that "any claims arising under the same

transaction as the claims debated in the prior proceeding should be precluded" –

was incorrect.

AUA countered, and the Tribunal agreed, that *res judicata* should not be

applied so broadly.  Rather, the Tribunal determined, consistent with both

Antiguan and Second Circuit law, that the relevant inquiry is whether the factual

predicates and evidence needed for the claims and defenses in the Second

Arbitration were substantially identical to those present in the First Arbitration.

*See Mavis Henry v. Tyrone Walker*, Claim No. ANUHCV 2000/2007 Eastern

Caribbean Supreme Court (2009) (A 808-09) ("cause of action estoppel arises

when the cause of action in the later proceedings is identical to the early

proceedings") ; *Woods v. Dunlop Tire Corp.*, 972 F.2d 36,  (2d Cir. 1992) (*res

judicata* applies where parties and "underlying occurrence" are the same).

Here, the matters and issues raised by the parties in the Second Arbitration

were not the subject of the First Arbitration.  The claims in the First Arbitration

were limited to: (a) Leeward's claims that AUA breached the contract by deleting work without Leeward's consent and by failing to pay for: the deleted work, a mobilization fee, and project delays; (b) Leeward's claims that AUA was liable to Leeward for interest; and (c) AUA's counterclaims for damages caused by Leeward's delays.

None of the factual or legal issues presented in the First Arbitration were the same as any of the issues presented in the Second Arbitration. None of the claims and none of the defenses in the First Arbitration involved any aspect of ABST or construction defects. The facts underlying the First Arbitration were significantly different than the facts underlying the Second Arbitration and no aspect of the claims and defenses in the Second Arbitration was required to be determined in order for the claims and defenses in the First Arbitration to be adjudicated. No aspect of any of the claims or defenses in the Second Arbitration were "essential elements" of the First Arbitration.

Most importantly, the Tribunal in the First Arbitration expressly found that claims relating to ABST "not having been originally claimed and submitted as a controversy in this Arbitration and having been discovered and in good faith informed by AUA representatives during the Hearings, *the Panel concludes that this claim should be corrected outside the context of this Arbitration*. (A 331-32) (emphasis added). In short, the First Award deferred ABST issues to another

32

proceeding.  Leeward recognized this by commencing the Second Arbitration to recover from AUA a payment on account of ABST.  (A 093).  Having raised the issue of ABST itself in the Second Arbitration, it cannot now argue that all consideration was barred because it was not raised in the First Arbitration.  The Tribunal explicitly considered the same arguments Leeward advances here and correctly rejected Leeward's *res judicata* argument.  (A 174-75).

Leeward places great emphasis on the fact that arbitrator Carlos A. Romero, Jr., in a partial dissenting opinion, found that "Leeward presented persuasively its position that either res judicata, collateral estoppel, claim preclusion, or issue preclusion apply."  (A 434).  But a dissenting arbitrator's opinion does not change the stringent  "manifest disregard" standard of review.  *See, e.g.,  Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390-93 (2d. Cir. 2003) (affirming panel majority's "plausible reading"); *Ometto v. ASA Bioenergy Holding A.G.*, 2013 U.S. Dist. LEXIS 7402 (S.D.N.Y. 2013) at *16-*18, *aff'd o.b. Ometto v. ASA Bioenergy Holding A.G.*,  549 Fed. Appx. 41  (2d Cir. 2014) (panel rejected dissenting arbitrator's position).

As judges of this Court certainly know, that one member of a three member panel disagreed with the other two panelists does not mean that the majority "intentionally defied the law" or committed any "egregious impropriety."  It simply means that there was a reasonable disagreement.  Leeward disagrees with

that decision, but its belief that the Tribunal was wrong and its desire to re-litigate the decision cannot transform debatable conclusions of law into "manifest disregard."

### B.    AUA Did Not Waive Its Claim For Restitution By Paying The ABST Surcharge To Leeward

As to Leeward's waiver and modification arguments, once again, Leeward simply rehashes the same arguments that the Tribunal—correctly—rejected. Essentially, Leeward argues that AUA waived its right recover the amounts Leeward falsely invoiced as ABST because AUA paid "each and every payment requisition including ABST without protest."  But, as AUA argued in the Second Arbitration, Section 13.4.2 of Article 13.4 of the Agreement, "Rights and Remedies," bars Leeward from asserting a defense of waiver.  The section provides:

> No action or failure or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval or acquiescence in a breach thereunder, except as may be specifically agreed in writing.

(A 088).

At no time did AUA ever agree in writing to waive its right to recover the sums that Leeward invoiced and collected on account of ABST if Leeward did not pay ABST.

Moreover, the actions of AUA that Leeward cites as the basis for its waiver and modification arguments do not satisfy the elements for those defenses. To successfully argue waiver, Leeward would have to establish that AUA, by its conduct, led Leeward to believe that AUA was not going to insist upon its contractual right to recoup sums improperly invoiced and collected under the Agreement, with the intent that Leeward act in reliance on that representation to its detriment. *See Bremer Handelsgesellschaft v. C. Mackprang Jr.*, 1 Lloyd's Law Report 221 (Court of Appeal 1979) (A 716). In addition to Leeward's detrimental reliance, AUA's conduct evidencing the waiver must be knowing and unequivocal. *See Motor Oil Hella (Corinth) Refineries S.A. v. Shipping Corp. of India ("The Kanchenjunga")*, 1 Lloyd's Rep. 391 (House of Lords 1990) (A 843).

Here, by invoicing AUA for ABST and pocketing the money, Leeward cannot be said to have acted to its detriment in any way. Nor did AUA know that Leeward was pocketing what it called ABST when it paid Leeward's invoices. On the contrary, Leeward represented to AUA that these payments were required Government taxes and, implicitly, that it would pay the taxes. No taxes were due, and Leeward kept all of the money it told AUA was going to the Government. Leeward does not deny this, but boldly argues that because AUA did not object to paying what it believed were required taxes, it has waived its right to get the money back from Leeward. In the alternative, Leeward asserts that AUA's

35

payment of ABST, "without protest, . . . constitutes a modification of the Contract's tax payment provisions" to provide that Leeward was empowered to make additional profit, unbeknownst to AUA, by seizing payments AUA believed were due as Government taxes. It is plain to see why the Tribunal found Leeward's waiver and modification arguments "unavailing."

## IV. THE AWARD IS UNAMBIGUOUS, CLEAR, AND FINAL

Leeward also argues that the Second Award is not a "final decision" as required by 9 U.S.C. § 10(a)(4). "[A]n arbitration award is final if it resolves all issues submitted to arbitration, and determines each issue fully so that no further litigation is necessary to finalize the obligations of the parties." *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 177 (2d Cir. 1998) (citation omitted). Moreover, the decision "must resolve [the issues] definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication." *Id.* at 176. This standard "does not require that the arbitration award resolve every outstanding issue that might arise in later litigation between the parties." *Id.* at 177. Indeed, an award that "finally and conclusively dispose[s] of a separate and independent claim . . . may be confirmed although [it does] not dispose of all the claims that were submitted to arbitration." *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007)

(citing *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986)).

Leeward claims that the Second Arbitration Award is non-final and ambiguous because it leaves Leeward open to potential "double liability" if the Antigua and Barbuda tax authorities end up seeking ABST from them after all. This speculation is unsupported by any evidence that Antigua and Barbuda claims ABST is due. It is refuted by the Affirmation of Antigua's Deputy Director of Inland Revenue that none is due. (SA 1). It is reduced to a shadow by the fact that Leeward is defunct. Moreover, the Second Award definitively addresses this infinitesimal possibility. It requires AUA to indemnify Leeward if Antigua and Barbuda ever asserts ABST liability against it. (A 181-82). Providing for possible future occurrences does not make the award any less definite or final.

Although partial, the Second Award finally and conclusively disposes of the ABST claims. The Tribunal made findings of fact and conclusions of law regarding liability and awarded damages accordingly. It preemptively addressed Leeward's "double liability" scenario with its indemnification provision. The only issues left unresolved are AUA's separate and independent counterclaim alleging construction defects and awards of attorneys' fees and costs, if any. As *Zeiler* and *Metallgesellschaft* make clear, this is no bar to confirmation.

## <u>CONCLUSION</u>

For the foregoing reasons, the decision of the District Court should be affirmed.

Dated: September 28, 2015

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.
101 Park Avenue
New York, New York 10178
(212) 643-7000

By: <u>s/*James M. Hirschhorn*</u>

Attorneys for Plaintiff-Respondent

## <u>CERTIFICATE PURSUANT TO FED. R . App.P. 32 (a)(7)</u>

I, hereby certify that I have complied with the type volume limitations imposed by Fed.R.App.P. 32(a)(7).  I hereby certify that I have confirmed through a word count of a word processing system that the total number of words in this brief (excluding the Table of Contents and Table of Authorities) is 8,603.

By:  <u>s/*James M. Hirschhorn*</u>

SUPPLEMENTAL APPENDIX

# STATEMENT OF WITNESS

Statement of :  Douglas James McLaren

| | |
|---|---|
| Age of Witness (Date Of Birth): | 54 (21 September 1959) |
| Occupation of Witness: | Deputy Commissioner of Inland Revenue |
| Address and Telephone Number: | Inland Revenue Department, Woods Centre, Friars Hill Road, St. John's, Antigua and Barbuda |
| | 1 268 468 9485 |

This statement, consisting of  2 pages each signed by me, is true to the best of my knowledge and belief, and I make it knowing that, if it is tendered in evidence, I shall be liable to prosecution if I wilfully stated anything which I know to be false or do not believe to be true.

Dated the 4ᵗʰ day of November 2013.

Signed

Signature Witnessed by

1. I am employed by the Ministry of Finance of the Government of Antigua and Barbuda and currently hold the post of Deputy Commissioner of Inland Revenue. At the time of my involvement in this matter I then held the post of Director of ABST implementation within the Inland Revenue Department, which gave me overall responsibility for the operations of the ABST unit and the application and enforcement of the legal provisions of the legislative instruments thereto.

2. On Friday 31ˢᵗ August 2007 I wrote to the American University of Antigua College of Medicine (hereinafter referred to as AUA) regarding the application of ABST to their operations. In particular I dealt with the receipt of both goods and services in connection with their operations within the free trade and processing zone. I drew their attention to 14(c) (d) and 18 (3) of The Free Trade and Processing Zone Act 1994 and advised that the receipt of goods and services into the free trade and processing zone would be treated as exports from Antigua and Barbuda and Imports into the said zone. (A copy of the letter consisting of 2 pages is attached to this statement and is numbered McLaren 1).

3. This letter effectively advised the recipient that their receipt of goods and services would be relieved of ABST as exports from Antigua and Barbuda. This means that all materials and

SA1

construction services supplied in relation to the building situated within the free trade and processing zone would have ABST applied at 0% being exports of goods and services.

4. Section 34 (1) of the Antigua and Barbuda Sales Tax Act 2006 reproduced herein details the procedures which should be used where the supplier has erroneously charged the tax on a supply for which an original tax invoice has already been issued.

*34. (1) If*
*(a) a registered supplier has made a taxable supply to a registered recipient;*
*(b) an ABST adjustment event has occurred in relation to the supply;*
*(c) at the time of the supply, the supplier issued an original ABST invoice to the recipient; and*
*(d) the amount shown on that invoice as the ABST charged exceeds the ABST properly chargeable in respect of the supply, the supplier must provide the recipient with an original ABST credit note.*

5. This means that the supplier has the responsibility to correct their own error and ensure where an amount has already been paid to repay that amount to the customer as the amount previously shown is not in fact tax. In such a case this would then provide where such credit was granted that if the supplier was then placed in a credit position in respect of its liability to the Government and such credit met the legal tests laid down for a refund to be made to the supplier. There could be no position where the recipient of the goods and services would be eligible to be refunded by the Government.

6. In the period following my letter of Friday 31st August 2007 I understand that a number of contractors including Leeward Construction Company Limited requested that AUA pay the ABST on supplies as they did not accept their assurances that ABST was relieved. Accordingly AUA did so and sought a refund from the Government of Antigua and Barbuda. When this was brought to my attention I instructed the officer dealing with AUA at that time to return to the suppliers and utilize my letter of Friday 31st August 2007 to require that they repay the monies to AUA as they had been erroneously charged. This she did in her email of Tuesday 17th November 2009.(Numbered McLaren 2)

7. In this case I have examined the declarations of the taxpayer concerned, that being Leeward Construction Company Limited and they have neither declared nor paid tax as required by law on a monthly basis in respect of all their activities, and I am unaware that they have issued any ABST credit notes as required by Section 34 of the Antigua and Barbuda Sales Tax Act 2006, with regard to this particular project.

Signed          [signature]                    Signature witnessed by   [signature]

Page no 2 of 2

Continuation of witness statement of :  <u>Douglas James McLaren</u>



ABST Division
Inland Revenue Department        Government of Antigua & Barbuda
Newgate Street
St. Johns
Antigua

Tel No 562 5823

Fax No 462 3175

American University of Antigua                    Friday 31ˢᵗ August 2007
College of Medicine
Jasmine Court
PO Box W1451
St. John's
Antigua

Dear Sirs

I write with regard to the treatment of the University under the newly implemented Antigua
and Barbuda Sales Tax, and your correspondence in this regard and the subsequent meetings
with your representatives and the Minister of Finance and the Economy and the author.

Subsequent to our meetings and discussions I have reviewed the various pieces of legislation
which impinge on the taxation of imports and domestic supplies to the University. In the
first instance as previously communicated the Antigua and Barbuda Sales Tax Act 2006
makes no provision for the waiver of the tax and therefore makes all imports into and
purchases within Antigua and Barbuda subject to ABST at the rates defined within the Act.

There are therefore two areas that required consideration, those being the construction of
the University premises within the Free Trade and Processing Zone, and its future activities
within that zone. The second being the current activities carried on at Friars Hill Road and
Jasmine Court. I shall address each area in turn

Activities within the Free Trade and Processing Zone

The Free Trade and Processing Zone Act 1994 contains a number of provisions dealing with
the treatment of licensees (which I understand you to be). Section 14 (c) and (d) (reproduced
below) allows for the importation of materials for the construction of premises and for the
operations carried on within the Free Trade and Processing Zone. This would cover direct
imports and relieve them from ABST.

> **14. Notwithstanding any law to the contrary, and subject only to this Act a
> licensee shall, during the currency of his licence be-**
> *(c) exempted from the payment of taxes and other duties on the importation
> of machinery, equipment, spare parts, construction material and other items
> needed to construct and operate facilities within the free trade and processing
> zone;*

1 | P a g e

SA3



ABST Division
Inland Revenue Department          Government of Antigua & Barbuda
Newgate Street
St. Johns
Antigua

Tel No 562 5823

Fax No 462 3175

> (d) *exempted from payment of duty and other taxes on the importation of raw materials and other goods to be incorporated in the products produced or assembled within or to be utilized in the performance of services within the free trade and processing zone.*

Sections 18 (3) of The Free Trade and Processing Zone Act 1994 (reproduced below) allows for domestic supplies of both goods and services to a licensee in the Zone to be treated as imports into the zone and exports from Antigua and Barbuda. This would cover domestic supplies into the Zone and relieve them from ABST.

> 18. (3) *Any goods and services sold by companies within Antigua and Barbuda and sent into the Free Trade and Processing Zones shall be considered as imports into the Free Trade and Processing Zone and as exports from Antigua and Barbuda.*

<u>Current Operations at Friars Hill Road/Jasmine Court</u>

Since these areas are currently outwith the Zone then none of the above applies to supplies received in respect of these operations. Section 27(1)(a) of The Free Trade and Processing Zone Act 1994 (reproduced below) allows the Minister with responsibility for Trade to make regulations Governing the operation of the Zone and I shall be discussing with the Minister of Finance and the Economy how these provisions may be utilised to include the current premises in the Zone thus bringing the above provisions to bear.

> 27. (1) *The Minister may, with the approval of the Cabinet, make regulations relating to -*
> (a) *the management, supervision, control and operation of a free trade and processing zone;*

I shall communicate further once the Minister has considered further the Ministries position in how we can further assist the University's development program.

Yours faithfully

DJ McLaren
Director ABST Implementation

SA4

| From: | Lyle Novick |
| Sent: | Tuesday, November 17, 2009 11:45 AM |
| To: | Williams, Jackie |
| Cc: | Matt Petersen; Basil Stuart |
| Subject: | FW: American University of Antigua-ABST Taxes |

Just received this email from the American University of Antigua-ABST Taxes department.

Lyle S. Novick
Manager of Financial Reporting
American University of Antigua
c/o GCLR, LLC
2 Wall Street 10th Floor
New York, NY 10005
Tel 212.661.8899   Ext. 168
lnovick@auamed.org

**From:** Cleo T. Wallace [mailto:cleotwallace@gmail.com]
**Sent:** Tuesday, November 17, 2009 11:30 AM
**To:** Lyle Novick; Cleo T. Wallace
**Subject:** Fwd: American University of Antigua-ABST Taxes

Dear Mr. Lyle Novick,

In the response to your email, Mr. Doug McLaren the Director of the Antigua and Barbuda Sales Tax informed me that a letter was written to your establishment pertaining to the ABST. The Letter dated 31 August 2007 stated that Activities within the Free Trade and Processing Zone Act 1994 contains a number of provisions dealing with the treatment of licenses wich I understand you to be. Section 14 (c) and (d) reproduced below allows for the importation of materials for the construction of permisees and for the operations carried on within the Free Trade and Processing Zone. This would cover the direct imports and relieve them from ABST.

Section 14 Notwithstanding any law to the contrary and subject only to this Act a licensee shall during the currenccy of his licene be -(c) exempted fromt he payment of taxes an other duties on the importation of machinery, equipment, spare parts, construction material and other items needed to construct and operate facilities within the free trad and processing zone. (d) exempted from payment of duty and other taxes on the importatin or raw materials and other goods to be incorporated in the products produced or assembled within or to be utilized in the performance of services within the free trade and processing zone.

Section 18 of the Free Trade and Processing Zone Act 1994 alllows domestics supplies of both goods and services to a licencee in the Zone to be treated as imports into the zone and exports from Antigua and Barbuda. This would cover domestics supplies into the zone and relieve them from ABST. (3) Any goods and services sold by companies withing Antigua and Barbuda and sent into the Free Trade and processing Zone shall be considered as imports into the Free Trade and Processing Zone and as exports fromAntigua and Barbuda.

We are therefore advising you to return to the business places to recover the ABST that was spent. When approacing the Manager you will have to provide them with the letter dated 31st August 2007 which was sent

1

SA5

to Mr. Basil Staurt the Administration Director of the American university of Antigua, with regards to the provisons that were made.

If any problems occur you can inform me Ms. Cleo Wallace ABST Registration Supervisor, Ms. Nerissa Gomes Audit Supervisor, Everton Gonsalves, Coordinator of ABST Implementation Team or Douglas McLaren The Director of ABST.

Waiting for a quick response.

Sincerely,

Cleo Wallace
ABST Registration Supervisor

On Tue, Nov 17, 2009 at 9:53 AM, Lyle Novick <lnovick@auamed.org> wrote:

Ms Wallace:

Could you please provide me the link or the website address so I can get this refund form.

Thanks so much for all your help.

Lyle S. Novick

Manager of Financial Reporting
American University of Antigua
c/o GCLR, LLC
2 Wall Street 10th Floor

New York, NY 10005
Tel 212.661.8899   Ext. 168

lnovick@auamed.org

_____

**From:** Cleo T. Wallace [mailto:cleotwallace@gmail.com]
**Sent:** Tuesday, November 17, 2009 8:45 AM
**To:** Lyle Novick
**Subject:** Re: American University of Antigua-0409-0509

2

SA6

Dear Mr. Lyle Novick,

I received your emails and I am printing them now.  I will deliver them to Mr. Mclaren so that he can review them.  On the Government Website you can print the Refund form and fill out the necessary information. You can email it to me or you can fax it to me at The Inland Revenue Department.  The Fax Number is 1-268-462-3175 .

Thanking you in advance

Ms. Cleo Wallace
ABST Registration Supervisor

On Mon, Nov 16, 2009 at 2:49 PM, Lyle Novick <lnovick@auamed.org> wrote:

Ms Wallace:


Hi:


Did you receive my emails?


Thanks



Lyle S. Novick

Manager of Financial Reporting
American University of Antigua
c/o GCLR, LLC
2 Wall Street 10th Floor

New York, NY 10005
Tel 212.661.8899    Ext. 168

lnovick@auamed.org

---

**From:** Lyle Novick
**Sent:** Monday, November 16, 2009 12:28 PM

**To:** 'CleoTWallace@gmail.com'
**Cc:** 'revenue@antigua.gov.ag'

**Subject:** RE: American University of Antigua-0409-0509

3

00153

SA7

Lyle S. Novick

Manager of Financial Reporting
American University of Antigua
c/o GCLR, LLC
2 Wall Street 10th Floor

New York, NY 10005
Tel 212.661.8899    Ext. 168

lnovick@auamed.org

---

**From:** Lyle Novick
**Sent:** Monday, November 16, 2009 12:27 PM
**To:** 'CleoTWallace@gmail.com'
**Cc:** 'revenue@antigua.gov.ag'
**Subject:** RE: American University of Antigua-0209-0409 ABST Taxes backup

Lyle S. Novick

Manager of Financial Reporting
American University of Antigua
c/o GCLR, LLC
2 Wall Street 10th Floor

New York, NY 10005
Tel 212.661.8899    Ext. 168

lnovick@auamed.org

---

**From:** Lyle Novick
**Sent:** Monday, November 16, 2009 12:26 PM
**To:** 'CleoTWallace@gmail.com'
**Cc:** 'revenue@antigua.gov.ag'
**Subject:** RE: American University of Antigua-9/08-2/09 ABST Taxes backup

4

00154

SA8